**David DOE, et al.**

v.

**Larry R. MEACHUM, et al.**

**Civ. No. H–88–562(PCD).**

United States District Court, D. Connecticut.

April 12, 1989.

Shelley Geballe and Martha Stone, Connecticut Civ. Liberties Union Foundation, Hartford, Conn., and J.L. Pottenger, Jr., Jerome N. Frank Legal Services Organization, New Haven, Conn., for plaintiffs.

Stephen O'Neill, Steve Strom and Richard Couture, Asst. Attys. Gen., Hartford, Conn., for defendants.

1. For convenience purposes only, the acronym HIV shall be interchangeable with the acronyms AIDS (Acquired Immune Deficiency Syndrome) and ARC (AIDS–Related Complex).

## ORDER

DORSEY, District Judge.

Absent objection, the magistrate's ruling is accepted and adopted.

SO ORDERED.

## RULING ON PLAINTIFFS' MOTION TO COMPEL

JOAN GLAZER MARGOLIS, United States Magistrate.

On August 15, 1988, plaintiffs commenced this action with respect to the various policies of the Connecticut Department of Corrections regarding inmates who are infected with the Human Immunodeficiency Virus ("HIV")[1]; that same day, Judge Cabranes granted plaintiffs' motion for permission to prosecute suit in fictitious names. By agreement of counsel, on January 20, 1989, the court certified a class consisting of all inmates who were (since August 15, 1985), are, or will be committed to the custody of Commissioner Meachum, excluding the class certified in *Smith v. Meachum*, Civ. No. H87–221(JAC). (*See* Dkt. # 88, approved absent objection on February 13, 1989).[2]

On February 27, 1989, plaintiffs filed the pending motion to compel production of documents and brief in support. (Dkt. ## 99–100). Attached to the motion or brief were six exhibits—continued deficiencies in defendants' response to plaintiffs' request for production (Exh. A); copy of letter from Attorney Couture to Attorney Geballe, dated January 19, 1989 (Exh. B); requests for production to which defendants have formally objected (or informally objected by not producing or by redacting information) (Exh. C); a proposed protective order (Exh. D); affidavit of Attorney Geballe (Exh. E); and copy of plaintiffs' motion to compel and Judge Cabranes' endorsement thereon, filed November 7, 1988, in *Smith v. Meachum, supra* (Exh. 1). On

2. The parties further agreed as to content and manner of notice to class members. (*See* Dkt. # 102, filed March 2, 1989).

March 15, 1989, defendants made the following four filings—defendants' response to the production deficiencies alleged in Exhibit A to the plaintiffs' motion to compel production of documents; defendants' response to the plaintiffs' request for the production of the documents listed in Exhibit C to the plaintiff's motion to compel; defendants' motion for protective order;[3] and defendants' brief in opposition to plaintiffs' motion to compel and in support of defendants' motion for protective order.[4] (Dkt. ## 108–11). Lengthy oral argument was held on March 20, 1989. For the reasons stated herein, plaintiffs' motion is granted in part and denied in part.

DISCUSSION

Using the format set forth by the parties in plaintiffs' Exhibit A and defendants' response thereto, and focussing initially on the items at issue at the March 20th oral argument, plaintiffs' motion to compel is granted in part and denied in part as follows:

I. FIRST REQUEST FOR PRODUCTION.

A. CENTRAL OFFICE RESPONSE.

■ Requests ## 1–4—*Policy Formation.* Denied to the extent plaintiffs seek personal notes of individual participants in the Correctional Health Care Committee, granted to the extent defendants have within their possession any minutes of meetings held by any successor committee.

■ Request #7—*Funding Requests.* Denied, defendants having provided all documents which pertain specifically to HIV matters. Defendants agreed, however, to produce any new memoranda which come into their possession with respect to any funding by the Center for Disease Control.

Request #8—*Proposals and Contracts for HIV–Related Services.* Granted to the extent agreed to by defendants.

■ Request # 13—*Union Documents.* Denied, defendants having conducted two "very extensive searches" and having found no documents subsequent to 1986.

■ Request # 19—*Budget Options.* Denied, defendants having provided all documents which pertain specifically to HIV matters; granted, however, to the extent defendants have in their possession any documents which pertain to Dr. Hauser's proposed reorganization of employee responsibilities with respect to HIV matters.

■ Requests ## 22–23—*Incident Reports.* Granted, subject to the protective order filed today.

■ Request # 26—*Other Cases and Administrative Procedures.* Denied, defendants having no other documents within their possession.

B. INDIVIDUAL INSTITUTIONS— *Enfield.*

■ Request #5—*"Weekly Blood Drawing List" and Current CSD List.* Granted, subject to the protective order filed today. While defendants are correct that the blood drawing list is not responsive to the instant request, it is, however, responsive to other requests.

II. THIRD REQUEST FOR PRODUCTION.

A. CENTRAL OFFICE RESPONSES.

■ Request # 2—*Hiring of Medical Staff.* Granted to the extent set forth with respect to Request # 19 (*Budget Options*) *supra.*

Requests ## 7–8—*Annual, Quarterly and Monthly Reports.* Granted to the extent agreed upon by plaintiffs' counsel and defense counsel.

---

**3.** Attached to the motion were copies of orders issued in *CARC v. Geri Care,* Civ. No. H81–494(TEC) (D.Conn. Oct. 29, 1981) and in *West v. Manson,* Civ. No. H83–366 (AHN) (D.Conn. Nov. 12, 1983); a letter from Attorney Geballe to Attorney O'Neill, dated Jan. 31, 1985, with a medical release form in the *West* suit; and the proposed protective order.

**4.** Attached to the brief was Attorney Geballe's January 31, 1985 letter with the medical release form in *West. See* note 3 *supra.*

## III. FOURTH REQUEST FOR PRODUCTION.

Request #21—*Training Records.* Granted to the extent agreed to by defense counsel.

With respect to those items for which production has been ordered or for which defendants have agreed to conduct a further search and/or provide responsive documents, all production shall be made on or before April 3, 1989, if such documents presently are within the possession of the defendants.

Using the format set forth by the parties in plaintiffs' Exhibit C and defendants' response thereto, and focussing initially on the items at issue at the March 20th oral argument, plaintiffs' motion to compel is granted in part and denied in part as follows:

### FIRST REQUEST FOR PRODUCTION.

Request #5—*"Weekly Blood Drawing List."* Granted, subject to the protective order filed today, for the same reasons as set forth in *Enfield* Request #5 *supra.*

Request #6—*Curricula Vitae.* Granted to the extent agreed to by defense counsel, such compliance to be made on or before April 17, 1989.

Request #23—*Incident Report.* Granted, subject to the protective order filed today.

Request #28—*Most Recent CSD List.* Granted, subject to the protective order filed today.

### THIRD REQUEST FOR PRODUCTION.

■ Request #4—*Lab Invoices.* Granted, subject to the protective order filed today.

Requests ##7–8—*Quarterly and Annual Reports.* Granted to the extent agreed to by defense counsel and subject to the protective order filed today.

## FOURTH REQUEST FOR PRODUCTION.

■ Request #1—*Death Certificates and Coroner's Reports.* Granted to the extent such documents are within defendants' possession.

Request #4—*CSD List.* Granted, subject to the protective order filed today.

■ Request #9—*CSD Lists Confiscated or Otherwise Obtained.* Denied, defendants representing that no other lists exist.

■ Request #22—*Documents on Hospitalization.* Granted, subject to the protective order filed today, such compliance to be made on or before April 17, 1989.

■ Request #23—*Documents on Suicides or Attempted Suicides.* Granted, subject to the protective order filed today.

With respect to those items for which production has been ordered or for which defendants have agreed to provide responsive documents, unless otherwise provided, all production shall be made on or before April 3, 1989.

■ The question of production of medical and mental health records, as requested in the Second Request for Production, is a sensitive one. As Judge Munson observed in *Doe v. Coughlin,* 697 F.Supp. 1234, 1234 (N.D.N.Y.1988), the resolution of this issue requires the court to consider "the difficult task ... of determining the nature and extent of privacy rights of inmates who have tested positive for exposure to ... HIV ..." Here, as there, the court must "tread[ ] on relatively unexplored territory." *Id.* at 1236.

Defendants' argument is as follows: (1) disclosure is prohibited under Conn.Gen. Stat. §§ 52–146c to 52–146j absent written consent by each class member; (2) the Court has discretion under F.R.Civ.P. 23(d)(2) to require notice to all class members that they may sign consent forms with respect to the confidential health records; [5]

---

**5.** Defendants argue that absentee class members are not considered "parties" subject to discovery under F.R.Civ.P. 33 and 34, citing *Wainwright v. Kraftco Corp.,* 54 F.R.D. 532, 534 (N.D.Ga.1972).

That decision, however, reflects the minority view on that issue:

> While it is true that discovery against absentee class members under Rule 33 and 34 cannot be had as a matter of course, the over-

and (3) in the absence of written consent forms the court should permit only a random selection of redacted medical records.

■ Plaintiffs are correct, however, that in a civil rights action brought pursuant to a federal claim, state statutory privileges are not binding. F.R.Evid. 501. As Judge Weinstein ruled in *Lora v. Board of Education of City of New York*, 74 F.R.D. 565, 569 (E.D.N.Y.1977), regarding New York State's statutorily created privilege between students or parents and school psychiatrists, psychologists, and social workers, "The New York law of privileges is not decisive because the claim arises under federal law.... Nevertheless, ... New York's view of the matter and the expectations of its professionals and its patients may not be ignored...." (citations omitted). The *Lora* decision is particularly instructive, in that plaintiffs were minority students attending schools for socially maladjusted and emotionally disturbed students, who contended that such schools were being operated in a racially discriminatory manner. Judge Weinstein developed the following four-part test:

In determining whether disclosure in this case will unreasonably interfere with justifiable privilege expectations of students and their families four significant factors must be considered. First, is the identification of the individuals required for effective use of the data? Second, is the invasion of privacy and risk of psychological harm being limited to the narrowest possible extent? Third, will the data be supplied only to qualified personnel under strict controls over confidentiality? Fourth, is the data necessary or simply desirable?

*Id.* at 579. The court ordered disclosure to plaintiffs of fifty randomly selected diagnostic and referral files, subject to a strict protective order, including the redacting of all identifying data. *Id.* at 582–83, 587.

The second and third factors clearly militate in favor of disclosure, both sides having submitted proposed protective orders. The fourth element also compels disclosure, as the data sought is critical to plaintiffs' experts. The first element is the troubling one, in that to some extent, the experts' use of the files would not be hampered by eliminating identifying data. According to defendants, there are approximately 350 to 400 inmates presently incarcerated who are HIV positive. With such a large number of individual medical files, and given that HIV can be transmitted by sexual contact or by shared needles and the like, it may be critical to plaintiffs' experts and their counsel to be aware of the names of individual inmates, in order to evaluate their medical records over time and in comparison with those of other HIV-infected inmates. Thus, all four factors to be considered in *Lora* point towards disclosure of the requested medical records.

This conclusion is not inconsistent with the applicable Connecticut statutes, however. Conn.Gen.Stat. § 52–146c(c)(2) provides that communications between a psychologist and patient are privileged unless "in a civil proceeding, a person introduces the person's psychological condition as an element of his claim ..., and the judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between the person and psychologist be protected." Section 52–146f(5) similarly provides as follows: "Communications or

---

whelming majority of courts which have considered the scope of discovery against absentees have concluded that such discovery is available, at least when the information requested is relevant to the decision of common questions, when the interrogatories or document requests are tendered in good faith and are not unduly burdensome, and when the information is not available from the representative parties.

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635, 637 (D.Mass.1984). *See also U.S. v. Trucking Employers, Inc.*, 72

F.R.D. 101, 104–05 (D.D.C.1976) (& numerous citations therein); *Robertson v. National Basketball Ass'n*, 67 F.R.D. 691, 698–701 (S.D.N.Y. 1975) (& numerous citations therein). However, none of the above-mentioned decisions are applicable here, for among the concerns expressed therein was that defendants were serving discovery requests upon absentee class members for harassment and intimidation purposes only, whereas here it is the class members who are seeking discovery from defendants.

records may be disclosed in a civil proceeding in which the patient introduces his mental condition as an element of his claim ... and the court or judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between patient and psychiatrist be protected." In one of the largest class actions ever pending in this circuit, Judge Pratt rejected one plaintiff's claim of privilege against disclosure of his medical records, "Plaintiff is deemed to have waived any privilege that he may have had when he put his medical condition into issue by initiating this lawsuit." *In re "Agent Orange" Product Liability Litigation*, 91 F.R.D. 616, 618 (E.D.N.Y.1981). There can be little doubt that the psychological and mental condition of HIV-infected inmates is an element, if not a large element, of this class action. Given that disclosure is sought by professionals whose purpose it is to protect the constitutional rights of the plaintiff class, the court finds that it is more important to the interests of justice that the communications be disclosed, under the strict parameters set forth in the protective order, than that the relationship between patient and psychologist/psychiatrist be protected.[6]

Accordingly, plaintiffs' motion to compel production of these medical and mental health records is granted, subject to the protective order issued today. The records are to be limited to those of the named plaintiffs; all HIV-infected inmates currently incarcerated; HIV-infected inmates who died, attempted suicide, or were hospitalized while in DOC custody since August 15, 1985; and those HIV-infected inmates identified in the various incident reports produced by defendants. Compliance shall be made on or before March 31, 1989.

*See* 28 U.S.C. Section 636(b) (written objections to ruling must be filed within ten days after service of same); F.R.Civ.P. 72; Rule 2 of the Local Rules for United States Magistrates, United States District Court for the District of Connecticut.

---

**6.** Defendants further argue that plaintiffs cannot use Rule 23 as an "end run" around the

Dated at New Haven, Connecticut, this 22nd day of March 1989.

Connecticut statute. *But see* note 5 *supra*.