**John DOE and Jane Roe, Plaintiffs,**

v.

**Naomi MARSH, Joan L. Milowe, Arlene Sheffield, Rebecca Gardner, and Thomas Sobol, Defendants.**

**No. 93–CV–0676.**

United States District Court,
N.D. New York.

March 19, 1996.

Office of Connie Mayer (Connie Mayer, of counsel), Albany NY, for plaintiffs.

Dennis C. Vacco Attorney General for the State of New York, Department of Law (Deirdre Roney, Asst. Atty. Gen., of counsel), Albany NY, for defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

The defendants, NAOMI MARSH, JOAN L. MILOWE, ARLENE SHEFFIELD, REBECCA GARDNER, and THOMAS SOBOL, have moved for summary judgment. The plaintiffs, JOHN DOE and JANE ROE, two HIV[1] positive individuals, oppose the defendants' summary judgment motion and have cross-moved for summary judgment in their favor.

In brief, the plaintiffs allege that the defendants, either directly or by failing to prop-

---

1. Human immunodeficiency virus.

erly supervise, violated their constitutionally protected right to privacy, and thus 42 U.S.C. § 1983, and committed a breach of confidentiality in violation of Article 27F of the New York Public Health Law which prohibits the disclosure of HIV related information without written consent.

In particular, sometime in September of 1992, the New York State Education Department published a document entitled "Setting Up HIV Prevention Programs Including Persons Living With HIV/AIDS." As suggested by the title, the publication was a guide for those who wished to set up programs aimed at preventing the spread of HIV, and that used the services of HIV/AIDS infected individuals. The guide was written by the defendant Marsh and was reviewed prior to publication by her supervisor, the defendant Sheffield. No other defendants were involved in the production or distribution of the guide. Moreover, there was no procedure requiring further review of the document in question.

The troublesome portion of the guide is the acknowledgment page. The plaintiffs are among a number of individuals mentioned by their full names as having contributed to the success of the program and referenced as "living with HIV." The plaintiffs argue that, although both had discussed living with HIV and/or AIDS while participating in a number of panel discussions relating primarily to Education Department training programs, neither had disclosed their full name, and no panel discussions were open to the public. It is conceded that each plaintiff had been actively involved for a period of years with various HIV and or AIDS related awareness and advocacy organizations, such as: H.O.M.E., the Wellness Network, AIDS Council of Northeastern New York, the Damien Center, and the Albany County AIDS Housing Task Force. However, the plaintiffs argue that participation with these groups does not mean that the individual is announcing his or her status with regard to HIV, or more importantly, waiving the right to assert the claims set forth herein.

The defendants counter by alleging that the plaintiffs have waived their right to privacy by disclosing their HIV status in public, and on several occasions their full names. The defendants also claim that they are entitled to qualified immunity from suit on the basis that the law relating to a waiver of the right to privacy was not well-settled at the time that the complained of events occurred. The court now turns to the points of counsel.

## II. DISCUSSION

### A. Standard For A Motion For Summary Judgment

■ The standard for granting a motion for summary judgment is well-settled. Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. See, *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e). There must be more than a "metaphysical doubt as to the material facts." *Delaware & H.R. Co. v. Conrail,* 902 F.2d 174, 178 (2d Cir.1990) (*quoting, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). "In considering a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 516 (2d Cir.1994) (*quoting,* 10A C. Wright & A. Miller, Federal Practice and Procedure: Civil s 2721 at 40 (2d ed.1983)). However, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Azrielli,* 21 F.3d at 517. Any assessments of credibility and all choices between available inferences are matters to be left for a jury, not matters to be decided by the court on summary judgment. *Id; See, e.g.,* Fed.R.Civ.P. 56(e), 1963 Advisory Committee Note; *Agosto v. Immigration and Naturalization Service,* 436 U.S. 748, 756, 98 S.Ct. 2081, 2086–87, 56 L.Ed.2d 677 (1978);

*Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 472–73, 82 S.Ct. 486, 490–91, 7 L.Ed.2d 458 (1962); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Centronics Financial Corp. v. El Conquistador Hotel Corp.,* 573 F.2d 779, 782 (2d Cir. 1978); 6 Moore's Federal Practice P 56.02 at 56–45 (2d ed. 1993). "Only when reasonable minds could not differ as to the import of the evidence is summary judgement proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). It is with the foregoing standards in mind that the Court turns to the issues presented.

### B. 42 U.S.C. § 1983

■ To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove facts showing that a person acting under color of state law deprived plaintiff of a right, privilege, or immunity secured by the United States Constitution or the laws of the United States. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988); *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993). "By the plain terms of § 1983, two—and only two—elements are required in order to prevail on a cause of action under that statute. First, plaintiff must show that some person has deprived him of a federal right. Second, he must show that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Costello v. Fairfield,* 811 F.2d 782 (2d Cir.1987).

In the instant case, the plaintiffs have alleged that the defendants, all state employees violated their right to privacy, i.e., their right not to have their HIV status revealed without consent. The defendants have moved for summary judgment, and accordingly, the court now considers the points of counsel.

### C. Summary Judgment As To defendant Milowe

The plaintiffs did not oppose the defendant Milowe's motion for summary judgment.

Therefore, the court grants the defendant Milowe's motion.

### D. Qualified Immunity

The court now turns to the issue of the defendants' motion for summary judgment on the basis of qualified immunity, as it is dispositive of this action. The use of summary judgment as a procedural device to dispose early in the litigation process of those claims barred by qualified immunity is encouraged. *See Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992).

■ "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Yet, even if the rights in question are clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990). Accordingly, the subjective beliefs of the defendants are irrelevant to the Court's determination. *Finnegan v. Fountain,* 915 F.2d 817, 822 (2d Cir.1990). For an action of a government employee not to be covered by qualified immunity "in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), for where there is a "legitimate question" as to the state of the law, it cannot be said that the official's action violates clearly established law. *Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985). Finally, the court notes that qualified immunity protection turns on the " 'objective legal reasonableness' " of the allegedly unlawful official action "assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson,* 483 U.S. 635, 639, 107 S.Ct. 3034,

3038 (*quoting, Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738–39).

This situation is one in which the Court finds that qualified immunity should protect the state officials from suit.

### 1. Privacy Right As to HIV Status

■ The first prong of a qualified immunity analysis is to determine if the right allegedly violated is a constitutionally protected right. The right at issue is the right of privacy, specifically with respect to one's HIV status. The event at issue, the alleged unlawful publication of the plaintiffs' full names in a state Education Department training guide, occurred sometime in September 1992. Accordingly, the court must look to the law as it existed at that time. *See Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038.

■ The Constitution protects two kinds of privacy interests. One is the "individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). At the time of the challenged actions, it was clear that medical information was encompassed within the first category of privacy interests. *See United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3rd Cir.1980) ("There can be no question that ... medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection."); *Caesar v. Mountanos*, 542 F.2d 1064, 1067 n. 9 (9th Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977) (extending right to privacy to psychotherapist-patient communications). While the Second Circuit had not ruled on the issue, it should have been clear to a reasonable public official in 1992 that information regarding an individual's HIV status would fall within the privacy protection afforded medical information. *See Doe v. Attorney General of United States*, 941 F.2d 780, 796 (9th Cir.1991) (right to privacy in AIDS status should have been apparent in 1988); *Woods v. White*, 689 F.Supp. 874, 875 (W.D.Wis.1988), *aff'd*, 899 F.2d 17 (7th Cir. 1990) ("it would have been clear to a competent public official in 1986 that individuals had a constitutional right to privacy in information relating to AIDS"). This court found in 1988 that it was apparent that information regarding a person's HIV status was "extremely sensitive medical information." *Doe v. Attorney General*, 941 F.2d at 796; *Doe v. Coughlin*, 697 F.Supp. 1234, 1237 (N.D.N.Y. 1988) ("There are few matters of a more personal nature, and there are few decisions over which a person could have a greater desire to exercise control, than the manner in which he reveals [his HIV status] to others.").

■ Nevertheless, by 1992, it also was clear that the privacy right, at least as it applied to medical information, was not absolute. The right to privacy in one's medical history is a conditional right that may be overcome by the government's interest in having or using the information. *Whalen v. Roe*, 429 U.S. at 602 n. 29, 97 S.Ct. at 877 n. 29 (government intrusion may outweigh individual privacy interests in medical information). The government may use information covered by the right of privacy if it can show that its use would advance a substantial state interest and that the use is narrowly tailored to meet the legitimate interest. *Doe v. City of New York*, 15 F.3d 264, 269 (2d Cir.1994); *see also, Inmates of New York State with HIV v. Cuomo*, 1991 WL 16032 at *3–4. A plaintiff may waive the privilege when his medical condition is at issue in a lawsuit. *See Doe v. Meachum*, 126 F.R.D. 444, 449 (D.Conn.1989). Also, a plaintiff may waive the privilege by executing a written consent. *See, e.g.*, New York Public Health Law § 2780 et seq. (McKinney's 1993); *see also, Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 111 (3d Cir.1987) (right to privacy can be waived).[2]

What is clear from the foregoing, is that the right to privacy as to one's medical status, which includes one's HIV status, was established as of September 1992. *See Doe,*

---

**2.** The court notes, however, that the Second Circuit has stated that written consent is not *required* prior to disclosure of medical information in some instances. *See United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 581 (2d Cir. 1980).

697 F.Supp. at 1237. It was equally clear at that time that the right could be waived. *See, e.g., Fraternal Order of Police,* 812 F.2d at 111. However, what was not clear in 1992, and remains unclear today, is what constitutes a waiver of the right to privacy under the law. The plaintiffs fail to set forth any law applicable to this case that even discusses the issue of waiver, much less waiver as it relates to the right of privacy as to one's HIV status. *See Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross-motion for Summary Judgment,* at 19–25. The defendants argue that this lack of legal clarity as to waiver means that the right is not clearly established. The court disagrees. Implicit in the discussion of the waiver of a right is the existence of that right, or there would be nothing to waive. Moreover, a waiver itself affects the ability of one to assert a right. It does not speak directly to the existence of that right. Accordingly, in this case the court cannot grant the defendants' motion for summary judgment on the basis of qualified immunity predicated upon the lack of a clearly established constitutionally protected right. The court next must consider whether, given that the right at issue was clearly established, it was objectively reasonable for the state actors herein to believe that the inclusion of the plaintiffs' full names on the acknowledgment page was lawful. *See Lennon v. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995).

### 2. Objective Reasonableness Test

The qualified immunity defense will protect a state actor from suit if it was objectively reasonable for that actor to believe that his actions were lawful at the time of the challenged act. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040. This so-called "objective reasonableness test" will be met "if 'officers of reasonable competence could disagree' on the legality of the" defendants' actions. *Lennon,* 66 F.3d at 420. In *Lennon,* the Second Circuit stated that "if the court determines that the only conclusion that a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the

circumstances, summary judgment for the officers is appropriate." 66 F.3d at 421. The inquiry involves a legal question, to wit objective reasonableness, notwithstanding the fact that the court must focus on the particular facts of the case. *Id.* at 420–21.

Contrary to the plaintiffs' apparent understanding, the defendants are not arguing that there was no clearly established right to privacy of one's HIV status at the time of the publication of the guide. Rather, they are arguing that it was objectively reasonable for the defendants to include the names of the plaintiffs in the guide, given the uncertainty as to the law relating to a waiver of the right to privacy, and given the extensive involvement that the plaintiffs had with numerous panel discussions, publications, and organizations. The court agrees with the defendants.

As to the plaintiff Doe, it is clear and undisputed that, prior to the publication of the guide, he spoke at a number of panel discussions, some of which were organized by the Education Department. On these occasions, the plaintiff revealed his first name and the fact that he was HIV positive. The plaintiff has revealed his medical condition and some portion of his identity to hundreds of people on many occasions. In her deposition, Anne Brenner, a coordinator with the New York State Health Department, stated that in 1991 she saw the plaintiff stand up in the midst of approximately 20–25 people attending a workshop and state his full name and that he had AIDS. The plaintiff Doe edited the "Wellness Network of the Capital Region" newsletter that states in each issue, "[t]he material printed in this newsletter comes from people living with HIV/AIDS . . ." The plaintiff Doe's full name appeared in a number of the newsletters, and a letter written by the plaintiff, and signed in his full name, appeared in the April 1993 newsletter directly above the explanatory note.[3] The plaintiff states in his deposition testimony that a number of non-family members, and non-service providers were made aware of his HIV positive status. The plaintiff Doe stated that some of these people became aware of his status merely by their knowledge of his association with numerous HIV/

---

**3.** The court notes that this publication is dated    after the alleged wrongful actions.

AIDS awareness associations and advocacy groups. Finally, the plaintiff Doe states that he has disclosed his HIV status to certain family members and a number of close friends and/or acquaintances.

As to the plaintiff Roe, it is undisputed that she spoke about her HIV status, using her first name, on no less than five occasions. Each occasion was a workshop or conference targeting health care professionals and/or those involved with teaching others about HIV/AIDS. The plaintiff Roe also participated in a number of HIV/AIDS awareness associations and advocacy groups. A list of participants in a 1991 workshop, in which the plaintiff Roe revealed her HIV status, listed the full name of the plaintiff Roe, although the list itself did not indicate the defendant's status. The plaintiff Roe was videotaped telling her story about contracting HIV. In that connection, the plaintiff Roe signed a statement indicating her knowledge and assent that the videotape would be distributed for teaching/educational purposes at conferences, workshops, and in classrooms throughout the state, and without restriction. Finally, the plaintiff Roe disclosed her HIV status to certain family members and a few friends and/or acquaintances.

Based on the foregoing facts, the court finds that as a matter of law the only conclusion that a jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, i.e., whether the plaintiffs had waived the right to privacy. *See Lennon*, 66 F.3d at 421. In essence, the facts in this case show that the plaintiffs were visible participants in the HIV/AIDS advocacy and awareness movement, and that numerous individuals knew of their HIV status. The plaintiffs seem to complain vigorously about the use of their full names in connection with their HIV status. Notwithstanding the fact that at least plaintiff Doe has used his full name in connection with his HIV status previously, the court considers the emphasis on full name to be misplaced. The court

finds the Second Circuit's decision in *Doe v. City of New York* instructive.

In *Doe v. City of New York*, 15 F.3d 264 (2d Cir.1994), decided after the events giving rise to this lawsuit, the plaintiff therein alleged facts in support of a claim for breach of the right to privacy where a press release, although not mentioning the plaintiff's name, "did contain sufficient information to allow those who knew or worked with Doe to identify him." 15 F.3d at 265.[4] In effect, identifying characteristics of the plaintiff other than his name constituted publication of his identity, and hence raised a factual issue as to breach. The court finds that the converse must also be true. The release *by a plaintiff* of identifying characteristics other than a full name raises a factual issue as to whether the plaintiff has published his or her identity, and thereby waived the right to privacy. This is particularly true in light of the lack of guidance in the law as to what constitutes a waiver of the right to privacy. The plaintiffs would have the court deem the use of a full name a shibboleth for waiver. This the court cannot accept. Accordingly, the court grants the defendants' motion for summary judgment on the basis of qualified immunity.

### E. Personal Involvement Of Defendants Sobol And Gardner

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995), citing, *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). The circuit also noted that the personal involvement of a supervisory defendant may be shown by evidence that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in

---

4. In *Doe,* the plaintiff had not revealed his HIV status to his family or friends, but rather, had told only his lawyer and doctors.

supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of the [defendants] by failing to act on information indicating that unconstitutional acts were occurring." 58 F.3d at 873 (citation omitted).

The plaintiffs allege that the defendants Sobol and Gardner created a policy or custom under which unconstitutional practices occurred and/or were grossly negligent in supervising subordinates who committed the alleged wrongful acts. The plaintiffs, however, fail to set forth any facts in support of these claims. The mere fact that an individual occupies a high position is insufficient to sustain the plaintiffs' claim. *See Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Accordingly, the defendants Sobol and Gardner are entitled to a grant of their motion for summary judgment on the basis that they were not personally involved in the alleged wrongful conduct.

## III. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment dismissing the plaintiffs' complaint in its entirety.

**It is so ordered.**