**John DOE and Jane Roe, Plaintiffs–Appellants,**

**v.**

**Naomi MARSH, individually and as Co–Director of the HIV/AIDS Program for the Bureau of School Health Education, N.Y. State Education Department, Joan Milowe, individually and as Co–Director of the HIV/AIDS Program for the Bureau of School Health Education, N.Y.**

State Education Department, Arlene Sheffield, individually and as Co–Director of the HIV/AIDS Program for the Bureau of School Health Education, N.Y. State Education Department, Rebecca Gardner, individually and as Bureau Chief of the HIV/AIDS Program for the Bureau of School Health Education, N.Y. State Education Department, and Thomas Sobol, individually and as Commissioner of the N.Y. State Education Department, Defendants–Appellees.

No. 481, Docket 96–7453.

United States Court of Appeals,
Second Circuit.

Argued Oct. 7, 1996.

Decided Jan. 22, 1997.

Kim Cottone, Law Clinic of Albany Law School, Albany, NY (Connie Mayer, Law Clinic of Albany Law School, on the brief), for plaintiffs-appellants.

Daniel Smirlock, Assistant Attorney General of the State of New York, Albany, NY (Dennis Vacco, Attorney General, Barbara Gott Billet and Nancy A. Spiegel, Assistant Attorneys General, on the brief), for defendants-appellees.

Before: OAKES and ALTIMARI,* Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiffs-appellants John Doe ("Doe") and Jane Roe ("Roe") appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, *Chief J.*), granting defendants'-appellees' motion for summary judgment on the basis of qualified immunity and dismissing their § 1983 complaint alleging violation of their right to privacy. *See Doe v. Marsh,* 918 F.Supp. 580 (N.D.N.Y.1996). We conclude that the state officials' actions at issue were objectively reasonable, and therefore affirm.

### Background

Doe and Roe are HIV-positive individuals who are active in various HIV/AIDS support and advocacy organizations. Among other activities, both Doe and Roe have participated in educational seminars for social workers and educators focusing on HIV prevention. At the time of the incidents underlying this case, the defendant-appellee Naomi Marsh ("Marsh") was employed by the New York State Department of Education ("SED") HIV/AIDS program and was involved in developing and implementing seminars for people teaching HIV prevention in schools and elsewhere. As the director of SED's HIV/AIDS program, the defendant-appellee Arlene Sheffield was Marsh's immediate supervisor. Doe and Roe became known to Marsh and Sheffield through their speaking engagements at several seminars organized by Marsh. At these seminars, Doe and Roe identified themselves as being HIV-positive.

During the spring and summer of 1992, Marsh wrote a manual entitled "Setting up HIV Prevention Education Programs Including People Living With HIV/AIDS." Marsh was prompted to write the manual as a result of requests from seminar attendees and SED regional staff for a manual on how to establish a HIV-prevention education program in schools that would utilize local people who were living with HIV/AIDS. According to Marsh, because she wanted to credit the various persons living with HIV who had participated in the SED seminars and had taught her how to implement the seminars successfully, she included in an "Acknowledgements" page the following expression of gratitude:

> Men and women, young and old, living with HIV, have come forward from the beginning of this epidemic, knowing from certain knowledge that their personal risk would have been lessened if someone had talked to them about their behaviors. These courageous people have enhanced HIV prevention efforts immeasurably with their passionate exhortations to all of us to choose behaviors which minimize our risk of becoming infected. Our youth especially deserve this wisdom and insight before they become exposed to HIV. To these teachers, we are forever indebted[.]

There followed a list of individuals, including the full names of Doe and Roe.

Scheffield reviewed the manual, and in September 1992 approximately 150 copies were distributed by mail to various educators, including: (1) eight persons active in AIDS-prevention organizations who had reviewed previous drafts of the manual; (2) thirty-six persons who attended a March

---

* This matter was not decided during the lifetime of our beloved colleague J. Daniel Mahoney. The Honorable J. Daniel Mahoney, who was a member of the panel, died on October 23, 1996, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

1992 seminar organized by Marsh; (3) eighty-nine persons who had attended a conference in July 1991 organized by Marsh; (4) six BOCES regional AIDS training staff persons; and (5) no more than a dozen individuals involved in higher education who requested the manual from Marsh.

Doe and Roe appreciated neither the acknowledgment nor the publicity of their HIV status. In October 1992, Marsh received a letter from Doe's and Roe's counsel expressing outrage at SED's publication of her clients' names, and demanding that SED immediately stop distributing the manual and excise the names of those persons in the Acknowledgments who had not given written consent for their name to appear. Counsel for plaintiffs also demanded that copies of the manual already distributed be retrieved and destroyed. After speaking with plaintiffs' counsel, Marsh revised the Acknowledgements by deleting the names of the persons identified as living with HIV, and destroyed all copies of the original Acknowledgments in her possession. Further, in February 1993 she remailed a copy of the manual with the revised Acknowledgments to all persons to whom the manual was originally distributed and requested that copies of the original manual be returned to her. According to Marsh, only three copies of the original version were returned. Finally, Marsh sent a letter of apology to all the persons whose names she had listed in the original Acknowledgments.

In May 1993, Doe and Roe commenced the present action under 42 U.S.C. § 1983, alleging that the defendants violated their right to privacy under the First Amendment to the United States Constitution. They also included a pendant state law claim under New York Public Health Law § 2782, which generally prohibits the disclosure of an individual's HIV-related information except upon written consent of that individual. After discovery was completed, the defendants moved for summary judgment on the ground of qualified immunity, claiming, *inter alia,* that: (1) a specific constitutional right to privacy for persons with HIV had not been established at the time the defendants' manual was published in September 1992, and (2) in any event, Marsh and Scheffield had acted "objectively reasonable" in listing Doe's and Roe's names because Doe and Roe had waived any such right to privacy by publicly identifying themselves as persons living with HIV.

The district court concluded that a constitutional right to privacy as to one's HIV status existed as of September 1992. However, as explained in more detail below, the court held that because at the time of the manual's release the law was unclear regarding what constitutes a waiver of the right to privacy, it was objectively reasonable for the defendants to include Doe's and Roe's name in the manual. In the district court's view, reasonable officials could disagree whether Doe and Roe had waived their right to privacy by publicly identifying themselves as persons living with HIV. Accordingly, the court granted the defendants' motion and dismissed the complaint. It further dismissed the claims against the defendant Rebecca Gardner ("Gardner"), Marsh's and Scheffield's supervisor, on the ground that the plaintiffs failed to allege any facts to support a claim of supervisory liability against her.

Doe and Roe appeal the district court's decision, contending that the district court erred in concluding that the defendants were entitled to summary judgment on the issue of qualified immunity.

### Discussion

■ The law governing the immunity of government officials from a suit for civil damages is well-settled. "Government actors performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the chal-

**110**

lenged act." *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)).

■ For the purposes of this opinion we assume, without deciding, the threshold issue; namely, that at the time the manual was distributed by the defendants in September 1992 there existed a clearly established constitutional, confidentiality-based right to privacy which precluded the state from disclosing that the plaintiffs were persons with HIV. *Cf. Doe v. City of New York,* 15 F.3d 264, 266–67 (2d Cir.1994) (recognizing the existence of the right to privacy and confidentiality of one's personal medical information, of which privacy of one's HIV status is but an extension). Accordingly, our analysis focuses on the second prong of the qualified immunity test: whether the defendants' actions were objectively reasonable. *See Zahra v. Town of Southold,* 48 F.3d 674, 687 (2d Cir.1995) (assuming for purposes of analysis the threshold issue of a clearly established right and proceeding to analyze the second prong); *see also Pinaud v. County of Suffolk,* 52 F.3d 1139, 1148 n. 4 (2d Cir.1995) (noting that district court's evaluation of issue of absolute immunity before assessing whether plaintiff sufficiently had alleged a constitutional violation "comports with the approach implicitly endorsed by the Supreme Court" in *Buckley v. Fitzsimmons,* 509 U.S. 259, 261, 113 S.Ct. 2606, 2609, 125 L.Ed.2d 209 (1993) (assuming for purposes of analyzing a claim of absolute immunity that petitioner alleged a constitutional violation)).

■ Summary judgment on qualified immunity grounds may be granted if the court finds, viewing the evidence in the light most favorable to the plaintiffs and drawing all reasonable inferences in their favor, that "no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." *In re State Police Litigation,* 88 F.3d 111, 123 (2d Cir.1996). "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Lennon,* 66 F.3d at 420. An official's actions are "objec-

tively unreasonable when no offic[ial] of reasonable competence could have made the same choice in similar circumstances." *Id.* at 420–21. Thus, "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Id.* at 421. *See also Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985) (where there is a "legitimate question" as to the state of the law, it cannot be said that the official's action violates clearly established law).

The district court in the instant case concluded that the defendants acted "objectively reasonable" because reasonable officials would disagree about whether the plaintiffs had waived their right to privacy. Its conclusion was premised upon, among other things: (1) Doe and Roe were extensively active in promoting HIV prevention awareness among health officials and others who were at-risk in contracting HIV; (2) Doe and Roe had identified themselves at numerous training seminars and conferences organized by the SED as persons with HIV; (3) Doe's full name and telephone number were listed in a February 1992 letter sent to community health officials in the Albany area notifying them of a group representing men, women, and children with HIV called HIV/AIDS Organizers Maintaining Empowerment, which officials could utilize as a resource; and (4) in a voluntary appearance on an educational videotape about HIV produced by Albany Educational Television for adult literacy programs, Roe disclosed that she was HIV-positive, signed a release authorizing the videotape to use her face, voice and first name, and acknowledged that the tape would be used in a variety of educational settings. *See* 918 F.Supp. at 586–87.

We agree with the district court that, at least as of the time the SED manual was first distributed to educators in September 1992, the law regarding waiver of the right to privacy was not clearly stated, and, therefore, the plaintiffs' conduct of identifying themselves before seminar and conference audiences as persons living with HIV could

reasonably be construed by state officials as a waiver of their right to privacy—that is, of their right to not have their HIV status disclosed. *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (an official's qualified immunity "generally turns on the 'objective legal reasonableness' of the action, assessed in light of legal rules that were 'clearly established' at the. time [the action] was taken.") (citations omitted).

 We begin by recognizing the general rule that a waiver "is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Moreover, the waiver of or "acquiescence in the loss of" any fundamental right can neither "be presumed nor may it be lightly inferred." *United States v. Mapp,* 476 F.2d 67, 77 (2d Cir.1973). Indeed, courts must "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Zerbst,* 304 U.S at 464, 58 S.Ct. at 1023.

Although the Supreme Court has explicitly held that a waiver of a constitutional right in the criminal context must be made "voluntarily, knowingly, and intelligently," the Court has not expressly held that the same standard governs waiver in the civil context. *See D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185, 92 S.Ct. 775, 782, 31 L.Ed.2d 124 (1972) (assuming, without deciding, that the standard for waiver of due process rights in civil context is the "voluntary, knowing, and intelligent" standard which governs waiver in criminal context); *Fuentes v. Shevin,* 407 U.S. 67, 94, 92 S.Ct. 1983, 2001–02, 32 L.Ed.2d 556 (1972). *See also Mapp,* 476 F.2d at 77 (recognizing in a criminal context that under "general legal waiver principles" the waiver of a constitutionally protected right must be "knowing and voluntary"). While our recent decision in *United States v. Local 1804–1,* 44 F.3d 1091 (2d Cir.1995), suggests that the waiver of a fundamental right in the context of civil cases must be made voluntarily, knowingly and intelligently, *see id.* at 1098 n. 4 (noting that the complainant, who challenged a consent decree in a labor dispute which restricted his associational contacts, "does not appear to contest the principle that an individual may waive constitutional rights in a consent decree, provided that the waiver is voluntary, knowing, and intelligent"), and our decision in *Doe v. City of New York* indicates that a plaintiff with HIV may have waived his right to privacy by entering into a settlement agreement that he knew would become a matter of public record, *see id.,* 15 F.3d at 269, *cf. Doe v. Southeastern Pennsylvania Transportation Authority,* 72 F.3d 1133, 1138–39 (3d Cir.1995) (disclosure of employee's HIV-related medication in company health plan report does not constitute a waiver of employee's right to privacy from disclosure of his medical condition to coworkers), *cert. denied,* —— U.S. ——, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996), the defendants here did not have the benefit of whatever clarity these cases afford on the issue of waiver.

Consequently, it was unclear in September 1992 that in the context of the right to privacy, any waiver of such a right had to be voluntary, knowing, and intelligent. Moreover, the "general legal waiver principles" referred to in *Mapp* operate at a level of generality that fails to establish the contours of a rule defining waiver sufficiently clear so that "a reasonable official would understand that what he is doing violates th[e] right" at issue. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. As a result, even drawing all reasonable inferences in favor of the plaintiffs and indulging every reasonable presumption against waiver, reasonable officials could disagree on whether Doe's and Roe's actions— particularly identifying themselves at seminars and conferences as HIV-positive persons, and Roe's disclosure of her HIV-positive status in an educational videotape that she acknowledged would be used in a variety of educational settings—constituted a "knowing and voluntary" waiver of their right not to have their HIV status disclosed to educators involved in HIV prevention.

Having concluded that the defendants were entitled to qualified immunity because their actions were objectively reasonable, we need not reach the remaining issues raised by the plaintiffs.

### Conclusion

For the reasons stated above, the judgment of the district court is affirmed.