**Pamela McNAIR, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**NEW YORK CITY HOUSING AUTHORITY, Joseph J. Christian, individually and in his capacity as Chairman of the New York City Housing Authority; Walter S. Fried and Blanca G. Cedeno, individually and in their capacities as members of the New York Housing Authority, Defendants.**

No. 81 Civ. 3797 (PNL).

United States District Court,
S.D. New York.

July 12, 1985.

John E. Kirklin, The Legal Aid Society, Director of Litigation, Civil Appeals & Law Reform Unit, New York City (James C. Francis IV, New York City, of counsel), David Goldfarb, Attorney-in-Charge, Bronx Neighborhood Office, New York City (David H. Mitchell, Stacy Cromidas, New York City, of counsel), Conrad A. Johnson, Attorney-in-Charge, Harlem Neighborhood Office, New York City (Diane Dixon, New York City, of counsel), John C. Gray, Jr., Brooklyn Legal Services, Corporation "B", Brooklyn, N.Y. (Roger J. Maldonado, Brooklyn, N.Y., of counsel), for plaintiffs.

Charles E. Williams, III, Gen. Counsel, New York City Housing Authority, New York City (Raphael Samuel, New York City, of counsel), for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEVAL, District Judge.

This class action is brought by rejected applicants for public housing in New York City. Plaintiffs challenge the validity of the defendant New York City Housing Authority's procedures for rejecting applicants, claiming the procedures do not comply with the statutory notice and hearing requirements of the United States Housing Act, 42 U.S.C. § 1437d(c)(3), or with the due process clause of the Fourteenth Amendment. Plaintiffs seek damages and

declaratory and injunctive relief. The plaintiff class consists of applicants for public housing whose applications were rejected under the current Authority procedures. The Authority contends that the current procedures are both statutorily and constitutionally appropriate.

The parties stipulated to a trial on a submitted record, including all papers submitted on cross-motions for summary judgment, of the issue of the validity of the current procedures afforded to public housing applicants whose applications are rejected. The issue of the eligibility of particular plaintiffs for public housing is reserved. On the issue submitted, this constitutes the court's findings of fact and conclusions of law.

*Current Procedures*

a. *Written Application*

An individual seeking public housing must submit a written application. If it is apparent from the application that the applicant does not qualify for public housing, a computer generated letter informs the applicant of ineligibility (Plaintiff's Exhibit 6). The bases for an ineligibility determination on the application alone are: excess income or assets; not being a resident within New York City; or being in standard housing currently. The letter informs applicants of the basis of their ineligibility, but no factual basis for the determination

is given. The letter explains that rejected applicants may visit the Applications Information Office (AIO) to review their applications and present new information.[1]

Applications that are not initially disqualified are prioritized[2] and processed. As indicated on each application form, if, because of low priority, an application is not processed within two years it is discarded as inactive.

b. *Eligibility Interview*

Applicants not summarily rejected are called for an interview with the Eligibility Division to verify factors on the application such as income, residence, family composition, or rent payment history. The interviewer includes the information produced by the interview in the applicant's file on record forms. The interviewer will set down if she considers the applicant ineligible and on what basis. If a supervisor approves the interviewer's finding of ineligibility, the applicant is sent a letter of ineligibility without further investigation.

c. *Home Visit*

If further investigation is considered necessary or the applicant is unable to appear for an interview, an investigator will be sent to the applicant's home.[3] The investigator will note all observations such as the extent of the applicant's housekeeping and

---

1. The following letter is sent to notify applicants of their ineligibility on initial screening of their applications, without further interview or investigation:

   > We have received your application for public housing and have carefully reviewed it.
   > The review shows that you are ineligible for admission based on one or more of the reasons stated below.
   > _____The total income of your family exceeds the limits established for admission to public housing.
   > _____The total assets of your family exceeds the limits established for admission to public housing.
   > _____We can only accommodate families in most need and your present housing situation does not qualify you for consideration for public housing at this time.
   > _____You or a majority of your family are not currently residing in New York City.

   > If you believe that the finding of ineligibility is incorrect, you may visit our applications information office at 5 Park Place, New York, N.Y. 10007 any Tuesday, Thursday, or Friday, from 8:30 A.M. to 12:00 noon. A member of our staff will be available to review your application with you together with any new information that you may present.
   > Please use the reference number printed on top in all inquiries and correspondence.

2. For example, single persons under age forty-nine and six months who are not disabled or severely handicapped but who are otherwise eligible for public housing will be advised that their priority for housing is lower than single persons above that age.

3. The investigators are either housing consultants of the Eligibility Division, members of the Home Investigation Unit, or members of the Office of Resident Review and Counselling.

the care and supervision of any children present. The investigator does not discuss her observations with the applicant.

The investigator will also question the building superintendent, landlord and other individuals in the area of the applicant's apartment about the applicant. The investigator will not ask these people about the basis, length, or quality of their relationship to the applicant, or how they obtained the information they provide.[4] The applicant is not informed that the investigator will speak to other individuals in the building. The investigator will elicit information, such as rent payment history, occurrence of fire, and contradictory or negative information, without asking the applicant's explanation for the incidents. All information the investigator obtains is included in the applicant's file, including uncorroborated and conflicting information. (Plaintiffs' Affidavit in Opposition of Raphael Samuel, ¶ 6, pp. 2–3). If an applicant is found ineligible after the home visit, an ineligibility letter is sent to the applicant.

### d. *Ineligibility Letters*

Certain applicants are found not to meet the standards for admission to the housing program. Among the bases for this determination are: a fire having occurred in the applicant's apartment; antisocial or criminal behavior by the applicant or a family member; applicant appears unable to care for self or family; abuses drugs or alcohol; poor housekeeper. Applicants found ineligible for such reasons are sent an ineligibility letter that tells them simply, "you do not meet the standards for admission to our housing program" without telling the grounds on which the determination was made or explanation of the factual basis. (Applicants so found not to meet the standards are sent this form of letter without explanation even if their application is rejected in part for other reasons as well.)

Applicants rejected for other reasons are sent a second form of letter that lists five possible reasons for rejection that may be checked: total family income is too great; total family assets are too great; the Authority was unable to verify income; the Authority was unable to verify family composition; or other. If "other" is checked, one of four further bases for ineligibility are filled in: poor rent payment record; Authority unable to verify residence; applicant already living in standard housing; or applicant neither resides nor is employed in New York City. No factual basis for the determination is indicated.

As to the right to challenge the adverse determination, ineligibility letters advise the applicant as follows:

If you wish to discuss this finding, you may visit our Applications Information Office at 5 Park Place, New York, N.Y. 10007 any Wednesday, Thursday or Friday from 9:00 A.M. to 12 noon. A member of our staff will be glad to review your application with you.

After this review, if you still wish, you may file a written request for reconsideration to the above address.

Requests for reconsideration must include the reason for the request, other pertinent information, and must be filed within 90 days from the date of this letter.

### e. *Applicants Information Office (AIO)*

At the AIO, applicants are called one at a time to a glass-partitioned window by a housing consultant, a member of the AIO staff. The interviews are conducted at a row of ten glass-partitioned booths, separated by thin wood panels. There are seats in the waiting area, but the booths used for the interviews do not have seats for the applicant, who must stand at the window. Defendant's Exhibits 4a–4f.

The housing consultant reviews the file and reads the applicant the "basis for ineligibility" form prepared by the Eligibility Division interviewer. If a home visit was conducted, the housing consultant will oral-

---

**4.** Third parties questioned are not asked their name, where they live or for how long, how long they have known the applicant or, if they mention an unreported adult living with the applicant, a description of the adult or the hours and number of times the adult was observed.

ly summarize the evidence gathered in the home visit report. No informants will be identified. The applicant is not permitted to see any documents in the file excepting documents submitted by the applicant. (Under Authority policy, documents in the file may be obtained only by filing a New York Freedom of Information Law (FOIL) request to the Authority, pursuant to New York Public Officers Law, § 84 *et seq.* Documents provided under FOIL are redacted, deleting names and identifying criteria of informants and Authority employees.)

Although the two ineligibility letters do not state this, the housing consultant will record information that the applicant wishes to provide to counter the basis of ineligibility. The housing consultant may advise the applicant to submit documentation necessary to establish eligibility. A small percentage of ineligibility determinations are reversed after incontrovertible rebuttal evidence as to the basis for ineligibility is presented by the applicant at the AIO meeting. There is no further opportunity for applicants to provide information orally to the Authority. The applicant is not told this.

### f. *Reconsideration Request*

An applicant may request reconsideration after AIO review. This right is indicated in the ineligibility letters. The housing consultant also advises the applicant of this opportunity after the AIO review, and provides the applicant with a copy of the Request form.[5] When requests for reconsideration are submitted, a supervisor at AIO determines whether it should be forwarded to the Application Review Board (ARB). There are three bases for refraining from forwarding a request for reconsideration: the request for reversal of the ineligibility determination is granted based on the materials submitted; the ARB sustained this ineligibility determination before, and no new evidence has been submitted; and the request was not filed within one year of the date of the ineligibility letter.[6]

### g. *Application Review Board (ARB)*

The ARB is the Authority's body that reviews rejected applicants' challenges to their ineligibility determinations. The ARB is composed of three members from Authority Offices.[7] The ARB staff reviews each applicant's file and then presents to the Board a summary statement of why the applicant was determined ineligible, the statements made by the applicant at the AIO review, and submitted written documentation. The applicant does not appear or present testimony to the ARB, and no witnesses are called.

Based on a majority vote of the Board, a determination is made either to sustain the finding of ineligibility, revoke the determination and return the application for more investigation or clarification, or reverse the finding of ineligibility. The applicant is notified of the ARB's decision by form letter. No factual basis for the determina-

---

**5.** The Request for Reconsideration Form reads as follows: "I have received an explanation of the status of my application and I wish to request reconsideration of the decision that I do not meet Authority standards for admission to public housing. EXPLANATION OR REBUTTAL (Attach additional sheets if necessary and any supporting documents if needed)." Defendant's Exhibit 6.

**6.** Plaintiffs contend that AIO personnel have refused to forward requests on other grounds, such as determining that the applicant did not provide sufficient documentation to rebut the finding of ineligibility (Plaintiff's 3(g) Statement

¶ 72, p. 27; Farrow Deposition, pp. 56–61, Plaintiffs' Exhibit 16), or instructing the applicant to wait several months before submitting the request to be able to show stable family composition or good rent payment history (Hamburg Deposition, pp. 38–39, 53–54, 65, Plaintiffs' Exhibit 9).

**7.** The three members are: a permanent chairperson who is a member of the Office of Resident Review and Counseling; a member of the Office of Community Affairs, assigned on a rotating basis; and a member of the Management Department, assigned on a rotating basis. See Defendant's Exhibit 7.

tion is given.[8] The Department of Housing Applications receives a memorandum summarizing the ARB's decision (see Defendant's Exhibit 11), but the applicant is not sent a copy.

## Discussion

Plaintiffs contend the procedures used in rejecting an applicant for public housing do not comply with the notice and hearing requirements of the United States Housing Act, 42 U.S.C. § 1437d(c)(3) and violate the due process clause of the Fourteenth Amendment. They contend the Authority must provide all applicants determined ineligible for public housing with: 1) notice of the adverse determination, including the specific grounds for rejection and full advice of the right to contest; 2) access to applicants' files and other evidence considered by the Authority in reaching its decision; 3) an opportunity for a live hearing conducted by an impartial hearing officer, where the applicant may be represented by counsel, present testimony and evidence, and question witnesses; and 4) a written decision based solely on evidence adduced at the hearing.

The Authority responds that the current procedures are statutorily and constitutionally adequate, and that more elaborate procedures would place an inordinate administrative burden and cost on the Authority. It argues further that revelation of its files would endanger those who provide useful adverse information to the Authority about prospective tenants.

The Housing Act provides that the "public housing agency shall promptly notify i) any applicant determined to be ineligible for admission to the project of the basis of such determination and provide the appli-cant upon request, within a reasonable time after the determination is made, with an opportunity for an informal hearing on such determination." 42 U.S.C. § 1437d (c)(3).[9]

I recognize the need and the statutory mandate for speed and informality in the hearing process, lest the agency's resources be drained in the litigation process. The need for confidentiality to protect sources from retaliation also is entitled to recognition in appropriate instances. Nonetheless, I find that the hearings and particularly the notice provided by the Authority are so inadequate that they do not fulfill its statutory obligation.

## 1. Notice

■ The most egregious failing of the Authority's procedures is the inadequacy of notice of the opportunity for redress. The Ineligibility letter is deficient not only in its failure, in many instances, to advise the applicant of the basis on which she was rejected, but even more seriously for its failure to inform her of her procedural rights. In advising of the opportunity for review, this letter is worse than uninformative; it is misleading in a manner that can seriously prejudice the applicant's cause.

The first problem results from failure to explain what factual finding led to the conclusion that the applicant "do[es] not meet the standards for admission...." She, therefore, goes to the AIO interview unprepared to rebut or disprove a finding of which she is unaware. See Billington v. Underwood, 613 F.2d 91, 94 (5th Cir.1980) (sufficient detail of the statement of reasons given the rejected applicant is re-

8. The ARB notice of decision sustaining ineligibility reads as follows:
"The Application Review Board met on [blank] to review the decision rendered by the Housing Applications Office. After careful consideration of the entire record, the Board voted to sustain the original finding of ineligibility.
If you have information that will shed new light on the finding of ineligibility, feel free to present it to the Applications Information Office."
Defendant's Exhibit 8; Plaintiffs' Exhibit 20.

9. The only relevant regulations provide parallel obligations to those in 42 U.S.C. § 1437d(c)(3):
The PHA shall promptly notify any applicant determined to be ineligible for admission to a project of the basis for such determination and shall provide the applicant upon request, within a reasonable time after the determination is made, with an opportunity for an informal hearing on such determination.
24 C.F.R. § 960.207(a).

quired to test the veracity of the agency's findings against him and to enable him to prepare rebuttal evidence to introduce at hearing appearance); *Singleton v. Drew,* 485 F.Supp. 1020, 1024 (E.D.Wis.1980) ("this court finds that the initial determination must set forth, with reasonable specificity, the reasons for denial of the application"); H. Friendly, *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267, 1280–81 (1975).

An even more serious failing is the inadequate and misleading notification of remedial procedures available. The ineligibility letter, quoted above, tells the applicant that "if [she] wishes to discuss" the finding, she may go to the AIO where "a member of our staff will be glad to review your application with you." It goes on to advise of the right thereafter to "file a written request for reconsideration."

This formulation suggests that the AIO interview serves to advise the applicant of the Authority's reasons or basis and that any challenge by the applicant awaits the filing of her request for reconsideration. It fails to advise her that the AIO interview is her "hearing," indeed, her only live hearing. The letter does not tell the applicant that what she says (or fails to say) at the AIO may be dispositive of her request for reconsideration. The letter does not tell the applicant whether she may be assisted by counsel at the AIO or whether she may bring witnesses. (Indeed, the Authority does not appear to have any established rule as to whether counsel or witnesses may appear at the AIO, this being left to the discretion of each interviewer.) *See generally Billington, supra,* at 94; *Singleton, supra,* at 1024–25.

The deficiencies of the notice provided by the ineligibility letters are compounded by the request-for-reconsideration procedure. The form given to the applicant to make this request suggests that the form constitutes simply a request for reconsideration. The form provides an opportunity for "explanation or rebuttal" and permits the applicant to attach "supporting documents if needed." It fails, however, to advise the applicant that this form constitutes her sole

remaining opportunity to proffer information or argument in support of her cause.

The Authority's position as to the deficiencies of its notice provisions is in no way aided by its claim of need for simple procedures. It would cost virtually nothing to give applicants notification of the findings made against them and clear advice of the procedures open to them to seek redress. In fact, better notice might well result eventually in substantial savings of the Authority's resources. As Judge Friendly has noted, "the more forthcoming the agency has been in disclosing its grounds, the stronger should be its position in asking curtailment of other procedures." H. Friendly, *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267, 1281 (1975). To this observation might be added that the more abbreviated the procedures afforded by the agency, the greater its obligation to give clear prior notification of their nature and extent.

### 2. *An Informal Hearing*

■ The statute provides the right to "an informal hearing." It is clear that the demands of plaintiffs, which call for nearly a full-fledged trial, are not required by the statute. On the other hand, the procedures used by the Authority are remarkably skimpy.

Among the most problematic features are the following:

The failure of the Authority to provide whether an applicant is permitted to be represented by counsel or to call witnesses at the AIO interview is particularly troublesome. These questions are fundamental to a hearing process. It is difficult to justify leaving them to the whim of each interviewer.

The physical disposition of the AIO interview is a further serious problem. The noise, the cramped space, the requirement that the applicant stand at the booth window opening, the close proximity of one booth to the next—all contribute to the result that a minimum of communication passes between interviewer and applicant.

If an applicant 'brought either lawyer or witness, it would be most difficult for both the applicant and the lawyer (or witness) to hear the other's discourse with the interviewer.

The need to protect adverse informants against the risk of violent retaliation is no doubt real in some instances. It is doubtful, however, whether the reality of this risk in some instances justifies the Authority's absolute across-the-board concealment of sources. This concealment, of course, impairs the applicant's ability to rebut what she cannot see. There would seem to be a strong argument for limiting the source concealment to instances where a judgment has been made that it is called for.

These are merely observations as to the sufficiency of the hearing and not rulings. What is clear is that the Authority's procedures are fatally defective in the light of the notice deficiencies discussed above. The relationship between notice and procedure is of such interdependence, it is speculative and difficult to rule on what procedures would be required if bolstered by proper notification. See Friendly, *supra*.

Plaintiffs have succeeded in showing that the Authority has failed to discharge its statutory obligation. I do not now make unnecessary, speculative and advisory rulings as to what procedures would be sufficient if combined with adequate notice.

Plaintiffs are entitled to judgment on this issue.

SO ORDERED.