**Thomas F. MORRIS, Plaintiff,**

v.

**NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, Defendant.**

**No. 00 CIV. 1060 DLC.**

United States District Court, S.D. New York.

Jan. 2, 2001.

600

Steven DeCastro, New York City, for Plaintiff.

Michael D. Hess, Carolyn A. Hafner, Corporation Counsel of the City of New York, New York City, for Defendant.

## OPINION AND ORDER

COTE, District Judge.

These competing summary judgment motions principally concern the amount of notice required for a person knowingly to waive his right to judicial review of an administrative decision denying his application for disability benefits. On February 19, 1999, the New York City Employees' Retirement System ("NYCERS") denied an application submitted by plaintiff Thomas F. Morris ("Morris") for disability benefits ("February 19 Denial"), and notified him of his right to have the denial reviewed by a Special Medical Review Committee on the condition that he

sign a Final Medical Review Waiver ("Waiver") giving up his right to any other judicial or administrative review to which he might be entitled. Morris signed the Waiver and, following the Special Medical Review, was again denied disability benefits.

On February 14, 2000, Morris brought this action against NYCERS under 42 U.S.C. § 1983 ("Section 1983"). In his first cause of action, Morris asserts that NYCERS violated his due process rights because NYCERS did not notify Morris that, as an alternative to the Special Medical Review, he had the right to judicial review of the February 19 Denial under Civil Practice Law and Rules ("CPLR") §§ 7801 *et seq.* ("Article 78"), and was giving up that right by signing the Waiver. In his second and third causes of action, Morris asserts that the Special Medical Review Committee violated due process by failing to follow its own procedures, and that the Committee's procedures—even if properly followed—violate due process. The parties now bring cross motions for summary judgment. For the reasons stated below, each motion is granted in part.

## BACKGROUND

The following facts are undisputed. NYCERS is a City administrative agency that manages retirement and disability benefits for City employees.[1] City employees can choose whether to become members of NYCERS during the first six months of their employment.[2] Once an employee becomes a member of NYCERS, he contributes a percentage of his salary to NYCERS, and NYCERS is required to pay the employee a "defined benefit" in return. *Id.* All NYCERS members are entitled to disability retirement benefits after they have worked for the City for 10 years. *See* Retirement and Social Security

---

1. Although neither party has provided any information regarding NYCERS, NYCERS' website describes its services and benefits. *See* NYCERS Benefits of Membership, *available at* http://www.ci.nyc.ny.us/html/nycers/html/membership.html.

2. The parties have not provided evidence that Morris is a member of NYCERS, but their submissions and arguments proceed on the assumption that he is.

Law ("RSSL") § 605(b)(2). If an employee has worked for the City for less than 10 years, he is entitled to accidental disability benefits, but only if he was incapacitated as a result of an accident sustained during the performance of his duties. *See* RSSL § 605(b)(3). When a NYCERS member submits an application for accidental disability benefits, NYCERS' medical board assesses the member's eligibility based upon a medical examination and an investigation of statements and certifications made by him or on his behalf. *See* New York City Administrative Code ("NYCAC") § 13–168. The medical board then makes a recommendation to the Board of Trustees, which reviews and certifies the medical board's conclusions. *See* NYCAC § 13–168.

Morris is a former employee of the New York City Department of Transportation. Morris was hired by the City of New York ("City") in 1988, and worked as a debris remover, and then as an assistant Highway Repairer for the Department of Transportation. Morris alleges that he suffered an injury on the job on April 12, 1993. Based on that injury, Morris applied to NYCERS for accidental disability benefits in July of 1996. NYCERS denied Morris's application.[3] Morris reapplied for benefits at least one more time and was again denied accidental disability benefits.

On February 19, 1999, Morris received a letter from the executive director of NYCERS, informing Morris that the medical board had recommended that Morris's most recent application for accidental disability benefits be denied and that the Board of Trustees had adopted that recommendation. The February 19 Denial advised Morris of his right to challenge the denial through an appeal to the Special Medical Review Committee, whose decision would be "final and conclusive." It read in pertinent part:

3. Neither party has provided any evidence regarding the events that led to the denial of

Should you wish to contest this recommendation, a request for medical review of the Medical Board's findings may be filed on your behalf by either your Bargaining Representative or by the Head of the Agency in which you are employed. The law gives you the opportunity to have your case reviewed by a Special Medical Review Committee which is made up of three independent doctors.

**The request and attached completed waiver must be filed with the Executive Director of NYCERS within 15 days from your receipt of this notification.**

**Upon receipt of the request and signed waiver the Special Medical Review Administrator will provide you with the names of the three physicians for you to contact and schedule appointments to be examined.**

Please be advised that the recommendations of the physicians serving on the Special Medical Committee shall supercede the recommendations of NYCERS' Medical Board and *shall be final and conclusive*, and no other disposition of the application by the Court or an Administrative Body or otherwise may be had.

(Emphasis in original.)

At the same time, Morris also received the Waiver. By executing the Waiver he both applied for review by the Special Medical Review Committee and agreed to waive "any and all rights ... to seek or obtain any other disposition ... by court, administrative proceedings or otherwise." It read in pertinent part:

To NYCERS' Board of Trustees:

*I do hereby provide that the execution and filing of this waiver shall constitute an agreement by me that the application* for Disability Retirement filed with the New York City Employees' Retire-

Morris's first application.

ment System *shall be disposed of by action of the Special Medical Committee* pursuant to the Administrative Code of the City of New York, *and that such action shall be final and conclusive.*

Furthermore, by agreeing to the above, *I waive any and all rights that I might otherwise have to seek or obtain any other disposition* of such application for Disability Retirement *by court, administrative proceedings or otherwise.*

I understand that this waiver shall be effective and binding upon me in accordance with the terms stated herein.

(Emphasis added.)

On March 4, 1999, plaintiff signed and notarized the Waiver. On March 8, Morris's Union filed a request for a Special Medical Review on his behalf. Morris received a letter on March 26 ("March 26 Letter") from the Assistant Deputy Director of NYCERS that acknowledged receipt of the Union's March 8 request and described the next step in the Special Medical Review procedure:

Please be advised that you will be receiving, within the next few weeks, a letter, which will give you the names of the three (3) Special Medical Review Committee's doctors you must contact for a final medical review examination...You will be notified of the Special Medical Review Committee's decision approximately 30 days following your last appointment with the Special Medical Review Committee.

On April 7, 1999, Morris received a letter from NYCERS ("April 7 Letter"), with a list of the three doctors who would be his Special Medical Review Committee (Dr. Lester Lieberman, Dr. Robert Zartesky, and Dr. Shiela Horn) and instructing Morris to schedule appointments with each of them. The April 7 Letter contained the first notice to Morris regarding the Special Medical Review Committee's procedures, including notice that he could not provide the Special Medical Review Committee with additional evidence in support of his claim. It described the procedure to be

followed by the Special Medical Review Committee as follows:

Each physician will have available for review all the information submitted to the NYCERS' Medical Board, the Medical Board's report and the NYCERS' minutes of any relevant Board of Trustees deliberations. *You may not submit any additional evidence to the Special Medical Review Committee.*

Upon receipt of this committee's reports, the consensus of the Review Committee will be transmitted to NYCERS, and you will be notified of the final disposition.

(Emphasis in original.)

In May, Morris was examined by the three Medical Review Committee doctors. Each doctor filled out a Review Committee Physician's Report of Findings and Disability ("Report"). The Report presented two questions:

I. *REQUEST FOR ACCIDENTIAL [sic] DISABILITY RETIREMENT*

Is the employee physically or mentally incapacitated for the performance of the duties of his/her job title?

II. *FOR ACCIDENTAL DISABILITY ONLY*

Is the employee's disability a natural and proximate result of an accident incurred in the performance of such duty?

Both questions had "Yes" and "No" boxes that could be checked off. The Report also included a third section for "Reports of Findings (e.g. Medical History, Exam Findings and Diagnosis)."

In their Reports, Dr. Lieberman checked "Yes" to Questions I and II; Dr. Zaretsky checked "Yes" to Question I and "No" to Question II; and Dr. Horn checked "No" to Question I and did not check a response to Question II. All three doctors attached additional findings to the Report. Although the three physicians disagreed in their assessment of Morris,

only one of the three concluded that Morris was "incapacitated for the performance of the duties of his job title" as the result of "an accident incurred in the performance of such duty." On September 1, 1999, Morris received a final letter from NYCERS ("September 1 Denial"), that stated:

> This is to advise you that the Special Medical Review Committee agreed with findings of the NYCERS' Medical Board. Therefore, the recommendation of denial of your application filed on June 2, 1998 for Disability Retirement remains unchanged.

> You should contact the NYCERS' Customer Service Division in connection with any other benefit that may be available to you when you reach retirement age.

Morris asserts that NYCERS violated his due process rights by failing to inform him that he had the right to challenge the February 19 Denial in an Article 78 proceeding, and that he was waiving that right by proceeding before the Special Medical Review Committee. In addition, Morris asserts that NYCERS violated its own procedures for determining eligibility for accidental disability benefits by failing to adopt a Report by majority vote in accordance with NYCAC § 13–169(c)(2). Finally, Morris asserts that NYCERS' procedures for determining eligibility for accidental disability benefits, even when correctly followed, violate due process because they do not provide the opportunity for an evidentiary hearing before the Special Medical Review Committee or another fact-finding body. In addition to a declaration that his rights have been violated, Morris seeks other forms of relief, including a judgment from the Court "affording [him] an opportunity to file an appeal in the State Supreme Court of New York against the NYCERS decision, pursuant to Article 78."

Morris moves for summary judgment on his first and second claims. NYCERS filed a cross-motion for summary judgment on all claims. With his motion for summary judgment, Morris also submitted an unopposed motion for leave to file an amended complaint.

## DISCUSSION

### A. Motion to Amend Pleadings

Leave to amend pleadings should be freely given, Rule 15(a), Fed.R.Civ.P., but should be denied if the motion to amend demonstrates bad faith, if leave to amend would result in undue delay or undue prejudice to the opposing party, or if the proposed amendment would be futile. *Dluhos v. Floating and Abandoned Vessel*, 162 F.3d 63, 69 (2d Cir.1998) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Because leave to amend would cause neither delay nor prejudice, and in the absence of any opposition, Morris's motion to amend is granted.

### B. Cross–Motions for Summary Judgment

Summary judgment may not be granted unless the submissions of the parties, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R.Civ.P. The substantive law governing the case will identify those issues that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the nonmoving party. *See Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994). When the moving party has asserted facts showing that the nonmovant's claims cannot be sustained, the opposing party must "set forth specific facts show-

ing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings. Rule 56(e), Fed.R.Civ.P. *See also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995).

Cross-motions for summary judgment are treated as unilateral summary judgment motions. *Straube v. Fla. Union Free Sch. Dist.*, 801 F.Supp. 1164, 1174 (S.D.N.Y.1992). Each movant must present sufficient evidence to satisfy its burden of proof on all material facts. *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir.1988).

## C. The Waiver

■ Section 1983 imposes liability on a person or entity who, "under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *K & A Radiologic Tech. Servs., Inc. v. Commissioner of the Dep't of Health*, 189 F.3d 273, 280 (2d Cir.1999) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)). To prevail on a Section 1983 claim, a plaintiff must show: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998). Defendant does not dispute that NYCERS is a state actor for the purposes of Section 1983, or that NYCERS was acting under color of state law. *See Campo v. New York City Employees' Retirement System*, 843 F.2d 96, 99 (2d Cir.1988).

■ Morris asserts that NYCERS deprived him of the rights and privileges guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The Due Process Clause protects individuals from being deprived of life, liberty, or property without notice and an opportunity to be heard appropriate to the nature of the deprivation. *See Gudema v. Nassau County*, 163 F.3d 717, 724 (2d Cir.1998). Specifically, Morris asserts that NYCERS violated his right to due process when it offered him the Waiver without informing him of his right to challenge the February 19 Denial of his application for accidental disability benefits through an Article 78 proceeding. As a result, Morris asserts, his decision to sign the Waiver and to proceed before the Special Medical Review Committee was not a knowing waiver of his rights.[4] NYCERS argues, in its cross motion for summary judgment, that the February 19 Denial and the Waiver provided all the notice that the Due Process Clause requires.

## 1. Choice of Law

■ It is first necessary to identify the law to be applied. NYCERS asserts that the effectiveness of Morris's waiver should be evaluated not under federal law, but under New York law, which allows for the invalidation of contracts only upon a showing of a traditional contract law defense, such as duress, illegality, fraud, or mutual mistake. *See, e.g., Lambertson v. Kerry Ingredients, Inc.*, 50 F.Supp.2d 163, 168 (E.D.N.Y.1999). NYCERS relies on two cases in which courts apparently examined the same waiver at issue in this case under New York law, and concluded that the plaintiffs had properly waived their rights to Article 78 proceedings. *See McEwan v. New York City Employees' Retirement System*, 159 A.D.2d 238, 552 N.Y.S.2d 219 (1st Dep't 1990); *Tropea v. New York City Employees Retirement System*, 49 A.D.2d 819, 372 N.Y.S.2d 685 (1st Dep't 1975). Unlike the plaintiffs in *McEwan* and *Tropea*, Morris has brought a federal claim. Because "'the question of a waiver of a federally guaranteed constitutional right is ... a federal question controlled by federal law,'" federal law

---

4. Although Morris states in conclusory terms that his waiver was not "knowing, voluntary, or intelligent," his entire analysis is addressed to the contention that he was not adequately advised of his right to an Article 78 proceeding.

applies to Morris's first claim. *Legal Aid Society v. City of New York,* 114 F.Supp.2d 204, 226 (S.D.N.Y.2000) (quoting *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966)).

## 2. Nature of the Property Interest

 The first step in analyzing a due process claim requires a determination of whether the plaintiff has a constitutionally protected interest, in this case, a property interest.[5] *Moody Hill Farms Ltd. Partnership v. U.S. Dept. of the Interior, National Parks Service,* 205 F.3d 554, 561–62 (2d Cir.1999). Constitutionally protected property interests "extend well beyond actual ownership of real estate, chattels, or money." *Campo v. New York City Employees' Retirement System,* 843 F.2d 96, 99 (2d Cir.1988) (internal quotation omitted). The types of property interests protected by the Due Process Clause are not defined by the Constitution itself, but are instead " 'defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Greenwood v. State, Office of Mental Health,* 163 F.3d 119, 122 (2d Cir.1998) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

### a. Property Right to Benefits

 Morris has identified two property interests that he claims are protected by the Due Process Clause. The first is his right to receive the benefits of his NYCERS membership. The right to receive the benefits of membership in a City or state pension plan is protected under the New York Constitution. It provides: " '[M]embership in any pension or retirement system of the state or of a civil

division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.' " *Weaver v. New York City Employees' Retirement System,* 717 F.Supp. 1039, 1043 (S.D.N.Y.1989) (quoting N.Y. Const. Art. 5, Sect. 7). This provision of the New York Constitution creates a contractual right to benefits that vests at the time the employee becomes a member of the program. *See Birnbaum v. Teachers' Retirement System,* 5 N.Y.2d 1, 9, 176 N.Y.S.2d 984, 152 N.E.2d 241 (1958). This right is strenuously protected because, "when an employee retires from public service it is the money payments he receives from either a pension or retirement system that is the principal if not the sole benefit the system affords him ... That reward or benefit is part of the compensation which he accepts in lieu of the greater rewards of private employment." *Id.* City and state pension and retirement benefits are, therefore, understood as "deferred compensation aimed at promoting long and faithful service," not as "a gold watch given only to those in good standing." *Winston v. City of New York,* 759 F.2d 242, 249 (2d Cir.1985).

Applying these principles, the Second Circuit has repeatedly found that a property right exists under programs comparable to the NYCERS benefit program. In reviewing the City funded pension program for teachers, the Second Circuit held that, "[a]lthough plaintiffs do not have an entitlement to their pensions as such, they do have a contractual right to a pension under the State Constitution upon fulfilling the statutory conditions, and this contractual right is a property interest under State law." *Winston v. City of New York,* 759 F.2d 242, 247 (2d Cir.1985). Similarly, in *McDarby v. Dinkins,* 907 F.2d 1334, 1336 (2d Cir.1990), the Second Circuit found

---

**5.** Plaintiff asserts in his Amended Complaint that he has a "liberty interest" in his disability benefits. The right to liberty, even when broadly construed, does not include the right to receive benefits. The right to benefits may, however, be a property interest protected under the Due Process Clause. It is unnecessary to require Morris to amend his complaint because defendant's brief does not indicate any confusion about the nature of plaintiff's claims.

that a City police officer had a "protectible property interest in his city pension benefit." In *Russell v. Dunston*, 896 F.2d 664, 668–69 (2d Cir.1990), the plaintiff was a member of the New York State Employees' Retirement System who had received temporary but was denied permanent disability benefits because his application was untimely. The Court found, as a preliminary matter, that plaintiff's "entitlement to disability retirement is a constitutionally protected property interest for the purposes of Section 1983." *Id.* at 668.

The Supreme Court's recent decision in *American Manufacturers Mutual Insurance Company v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999), does not require a different conclusion. In *Sullivan*, the Supreme Court held that an employee covered by Pennsylvania's workers' compensation system did not have a property interest in immediate, unconditional payment of workers' compensation benefits when those benefits were conditioned on determinations of eligibility. *Id.* at 60–61, 119 S.Ct. 977. Under Pennsylvania's program, an employer is required to pay for all "reasonable" and "necessary" treatment of an employee, but that obligation does not attach until the worker is found to be eligible. *Id.* at 59–61, 119 S.Ct. 977. The majority in *Sullivan* recognized in explicit terms that its decision did not address a claim based on "a property interest in [a] claim[ ] for payment." *Id.* at 61 n. 13, 119 S.Ct. 977. In concurring opinions, members of the Court observed that "due process requires fair procedures for the adjudication of ... claims for ... benefits." *Id.* at 62, 119 S.Ct. 977 (Ginsburg, J., concurring) (citations omitted). "That right—whether described as a 'claim' for payment or a 'cause of action'— is unquestionably a species of property protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 63, 119 S.Ct. 977 (Stevens, J., concurring in part and dissenting in part) (citation omitted). *See also G & G Fire Sprinklers, Inc. v. Bradshaw*, 204 F.3d 941, 943 (9th Cir. 2000); *Bass v. Butler*, No. C.A. 98–4112, 1999 WL 391483, at *2 (E.D.Pa. May 3, 1999).

**b. Property Right to Article 78 Proceeding**

The second property interest identified by Morris is the right to bring an Article 78 proceeding to prosecute his claim for disability benefits. In *Logan v. Zimmerman Brush Company*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Supreme Court held that the right to sue under the Illinois Fair Employment Practices Act (FEPA) is a constitutionally protected property interest. As the Court explained:

> [t]he hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except "for cause." Once that characteristic is found, the types of interests protected as "property" are varied and, as often as not, intangible, relating to the whole domain of social and economic fact. The right to use the FEPA's adjudicatory procedures shares these characteristics. A claimant has more than an abstract desire or interest in redressing his grievance: his right to redress is guaranteed by the State, with the adequacy of his claim assessed under what is, in essence, a "for cause" standard, based upon the substantiality of the evidence.

*Id.* at 430–31, 102 S.Ct. 1148 (internal quotations and citations omitted). *See also Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 485, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (right to bring state law claim against an estate is constitutionally protected property); *Martinez v. California*, 444 U.S. 277, 281–82, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (right to bring tort claim is, "arguably," constitutionally protected property).

New York has established adjudicatory procedures that protect and enforce NYCERS' beneficiaries' rights to obtain benefits. Article 78 creates a cause of action by which petitioners can challenge deci-

sions by state administrative agencies in the State Supreme Court, and obtain "[r]elief previously obtained by writs of certiorari to review, mandamus or prohibition." CPLR § 7801. In an Article 78 proceeding, a petitioner can raise four questions:

1. whether the body or officer failed to perform a duty enjoined upon it by law; or

2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or

3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including an abuse of discretion as to the measure or mode of penalty or discipline imposed; or

4. whether a determination was made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.

CPLR § 7803.

To initiate an Article 78 proceeding, a claimant files a petition that may be accompanied by affidavits and other evidence in support of his claim. *See* CPLR § 7804(d). The agency can submit a verified answer including a transcript of the administrative proceedings, affidavits, and other proof. *See* CPLR § 7804(e). If there is a triable issue of fact, the claim can be tried before the New York Supreme Court or the Appellate Division. *See* CPLR § 7804(h). *See also Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877, 881 (2d Cir.1996).

Article 78 proceedings have been found to satisfy the requirements of due process in a variety of contexts, including when survivor benefits were terminated by NYCERS without a hearing. *See Campo v. New York City Employees' Retirement System*, 843 F.2d 96, 101–02 (2d Cir.1988). Applicants for NYCERS' accidental disability benefits have also relied on Article 78 proceedings to challenge a denial of benefits. *See, e.g., Borenstein v. New York City Employees' Retirement System*, 88 N.Y.2d 756, 650 N.Y.S.2d 614, 673 N.E.2d 899 (1996); *Alessio v. New York City Employees' Retirement System*, 114 A.D.2d 774, 495 N.Y.S.2d 36 (1st Dep't 1985).

■ In sum, under the New York State Constitution, Morris has a constitutionally protected property interest in his right to receive benefits from NYCERS. Morris also has a constitutionally protected property right to bring an Article 78 proceeding, both because it is a statutorily created cause of action and because the State relies upon it to satisfy the requirements of due process when it denies benefits. Morris has, therefore, satisfied the first element of his due process claim: he has established the existence of property interests that cannot be denied without due process of law.

### 3. Requirements For An Effective Waiver

■ Having determined that Morris has a protectable right under the Due Process Clause, both to accidental disability benefits if he can establish his entitlement to them under NYCERS' eligibility requirements, and to assert his entitlement to those benefits in an Article 78 proceeding, the remaining issue is whether Morris knowingly waived these rights. In the context of at least certain constitutional rights, a waiver is defined as "an intentional relinquishment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). *See Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 306 (2d Cir.1986) (noting that this standard does not apply to waivers of all fundamental constitutional rights). Where a waiver concerns a fundamental constitutional right, it is neither "presumed nor may it be lightly inferred." *Doe v. Marsh*, 105 F.3d 106, 111 (2d Cir.1997) (internal quotation omitted). Courts " 'indulge every reasonable presumption against waiver

of fundamental constitutional rights.'" *Id.* (quoting *Johnson*, 304 U.S. at 464, 58 S.Ct. 1019). In such circumstances, proof of waiver must be established by "clear" and "compelling" evidence. *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 145, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

■ In the criminal context, constitutional rights can be waived only if the wavier is made voluntarily and knowingly. *See Clark v. Stinson,* 214 F.3d 315, 323 (2d Cir.2000). Neither the Supreme Court nor the Second Circuit has expressly held that the same standard applies in the civil context, *see Doe v. Marsh,* 105 F.3d 106, 111 (2d Cir.1997), but both the Supreme Court and the Second Circuit have implied that the standards are the same, *see Fuentes v. Shevin,* 407 U.S. 67, 94–95, 94 n. 31, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Marsh,* 105 F.3d at 111 (citing cases). Moreover, the Third, Fourth, Fifth, Sixth, Ninth and Eleventh Circuits have also held or supported the proposition that the same standard applies. *See Krentz v. Robertson Fire Protection District,* 228 F.3d 897, 908 (8th Cir.2000) (Beam, C.J., dissenting) (collecting cases).

■ In the criminal context, a waiver is a "knowing" one when there is an "awareness" of the consequences of the waiver. *See United States v. Morgan,* 51 F.3d 1105, 1110 (2d Cir.1995). The Government must show that a criminal defendant "has been sufficiently appraised of the nature of his [constitutional] rights, and of the consequences of abandoning those rights." *United States v. Kon Yu–Leung,* 910 F.2d 33, 38 (2d Cir.1990) (internal quotation omitted). A description of the rights that are being waived is one way to satisfy this requirement, particularly when such a description can easily be included in a preexisting document. *Morgan,* 51 F.3d at 1110.

■ In the civil context, a party waiving constitutionally protected rights—even when doing so through the execution of a contract—must also be made aware of the significance of the waiver. For example, in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the plaintiff had purchased household goods under a conditional sales contract. When the plaintiff defaulted, Firestone obtained a writ of replevin ordering a sheriff to seize the goods. Fuentes challenged the replevin procedures, arguing that they violated due process because they did not provide notice or an opportunity to be heard before the property was seized. Firestone argued that the plaintiff had waived her right to notice and a hearing by signing a contract that provided that, "in the event of default of any payment or payments, Seller at its option may take back the merchandise." *Fuentes,* 407 U.S. at 94, 92 S.Ct. 1983. In reaching the conclusion that Fuentes had not waived her due process rights by signing the contract, the Court observed that "[t]here was no bargaining power over contractual terms between the parties who, in any event, were far from equal in bargaining power," "[t]he purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale," and Firestone "made no showing whatever that the appellants were actually aware or made aware of the significance" of the waiver provision. *Id.* at 95, 92 S.Ct. 1983.

In contrast, in *D.H. Overmyer v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), which was decided earlier that same year, the Court found a valid contractual waiver of due process rights where the contract "was negotiated between two corporations," "the waiver provision was specifically bargained for and drafted by their lawyers in the process of these negotiations," and "both parties were 'aware of the significance' of the waiver provision." *Fuentes,* 407 U.S. at 95, 92 S.Ct. 1983 (quoting *Overmyer,* 405 U.S. at 187, 92 S.Ct. 775).

Applying *Fuentes,* the Third Circuit has held that a contractual waiver of a constitutional right must be made "with full understanding of the consequences" of the

waiver in order for a waiver to be knowingly made. *Erie Telecommunications, Inc. v. City of Erie,* 853 F.2d 1084, 1096 (3d Cir.1988). *See also Cullen v. Fliegner,* 18 F.3d 96, 105 (2d Cir.1994) (plaintiff did not waive right to present claims to an Article III court unless he "possessed an awareness" that he was waiving that right).

There is a line of cases that sheds light on the extent to which explicit notice must be given by the government of the specific rights being waived. These cases establish that, after a government benefit has been denied, due process requires clear and explicit notice not only of the basis of the denial but also of the opportunity for redress. It requires no great leap to find that the government must provide substantially the same kind of notice of the opportunity for judicial review of an administrative decision when it argues that there has been a waiver of that right to review.

In *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the Supreme Court held that due process requires a municipal utility to notify its customers of the availability of procedures by which they may contest their bills. Although a flyer sent out by the utility company notified customers when their payments were overdue and that service would be discontinued if payments were not made by a certain date, it nonetheless violated due process because the flyer "was not 'reasonably calculated' to inform [customers] of the availability of 'an opportunity to present their objections' to their bills." *Id.* at 14, 98 S.Ct. 1554 (quoting *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

Similarly, in *Weaver v. New York City Employees' Retirement System,* 717 F.Supp. 1039, 1045 (S.D.N.Y.1989), the Court found that the notice NYCERS provided the plaintiff that it was terminating his benefits violated his clearly established due process rights because it was "so con-

fusing that a reasonable lay person would not have known that he had an opportunity in fact to contest defendants' finding." Because it did not describe the procedure for protesting the termination, the notice "present[ed] him with a *fait accompli* rather than a meaningful opportunity to rebut" its findings. *Id.* at 1046.

In *McNair v. New York City Housing Authority,* 613 F.Supp. 910 (S.D.N.Y.1985), then District Court Judge Leval considered a class action brought by rejected applicants for public housing in the City. The plaintiffs asserted that the notices of denial did not meet the notice and hearing requirements of the Due Process Clause. After trial, Judge Leval concluded that the "most egregious failing of the Authority's procedures is the inadequacy of notice of the opportunity for redress." *Id.* at 914. The notice informed applicants of their right to discuss the rejection with a staff member at the Applications Information Office ("AIO") and, following that review, to file a written request for reconsideration. The notice did not, however, inform applicants that the review with the AIO was a "hearing," that an applicant could bring counsel or witnesses to that hearing, or that the written request for reconsideration would be the final opportunity for an applicant to present her case. Judge Leval also noted that "it would cost virtually nothing to give applicants notification ... of the procedures open to them to seek redress." *Id.* at 915. *But see Vialez v. New York City Housing Authority,* 783 F.Supp. 109, 117–18 (S.D.N.Y.1991) (no due process right to notice of the right to appeal termination of tenancy in City public housing) (Grubin, M.J.).

When reviewing the effectiveness of a waiver of a constitutional right, it is appropriate to consider not just the nature of the right at stake but also the circumstances in which the waiver is obtained. *See Fuentes,* 407 U.S. at 95, 92 S.Ct. 1983; *Bellmore,* 783 F.2d 300, 306 (2d Cir.1986). Regardless of the circumstances of the case, however, "a waiver of

constitutional rights in any context must, at the very *least*, be clear." *Fuentes,* 407 U.S. at 95, 92 S.Ct. 1983 (emphasis in original). Reviewing its forms and the context in which they are used, this Court finds that NYCERS was required to advise Morris with greater clarity of his right to challenge the February 19 Denial through an Article 78 proceeding so that his subsequent waiver of that right in favor of a final and binding review by the Special Medical Review Committee could be considered an informed decision.

NYCERS provides notice that an application for accidental disability benefits has been denied, and notice of the opportunity to have that decision reviewed by a Special Medical Review Committee. NYCERS also provides notice that signing the Waiver will foreclose "any and all rights that [one] *might otherwise have* to seek or obtain any other disposition." (Emphasis supplied.) NYCERS does not notify an applicant, however, of what those other rights to "obtain any other disposition" are. It does not advise the applicant of his right to an Article 78 proceeding, in which he can go to court and present evidence to support his claim. Nor does NYCERS explain how the procedures in an Article 78 proceeding differ from the Special Medical Review Committee's procedures. Moreover, NYCERS only provides information about certain critical Special Medical Review Committee procedures—for instance, that the applicant cannot submit any additional evidence to the Committee—after the applicant has signed the Waiver and agreed to forego other forms of review. In reaching the conclusion that NYCERS' current forms and procedures do not comport with the requirements of due process, the Court is cognizant of the fact that NYCERS has not identified any way in which it would be burdened by more explicitly informing applicants in the Waiver of the nature of the Special Medical Review procedure and the alternative availability of an Article 78 proceeding.

## D. Special Medical Review Committee Procedures

In his second claim, Morris asserts that NYCERS violated its own procedures, in violation of the Due Process Clause. Morris asserts that NYCERS did not act based on a recommendation adopted by a majority of the Special Medical Review Committee. He asserts that he was denied benefits although a majority of the Special Medical Review Committee had not concluded that his application should be denied. In fact, based upon the undisputed record submitted by the parties, a majority of the Committee did conclude that Morris was not entitled to accidental disability benefits: one doctor concluded that Morris was not disabled and another concluded that Morris's disability was not the result of an on-the-job accident. Consequently, Morris has not shown that there is any material fact in dispute which prevents a grant of summary judgment to the defendant on plaintiff's second claim.

■ Morris asserts in his final claim that the Special Medical Review Committee's procedures violate the Due Process Clause because they do not provide an opportunity to present evidence and confront witnesses. The availability of state proceedings that provide an alternative opportunity to be heard, such as Article 78 proceedings, satisfy the requirements of due process. *See Campo,* 843 F.2d at 102–03; *Gudema,* 163 F.3d at 724–25; *Hellenic American,* 101 F.3d at 881.

## CONCLUSION

Plaintiff's motion for summary judgment and request for a declaratory judgment on his first claim is granted; defendant's motion for summary judgment on that same claim is denied.[6] The Final

6. The other forms of judgment plaintiff requests are denied. Plaintiff has provided no basis for this Court to conclude that it has jurisdiction or authority to grant plaintiff the opportunity to file a claim under Article 78.

**612**

Medical Review Waiver Form submitted to the plaintiff by the New York City Employees' Retirement System did not provide the plaintiff with sufficient notice of: (1) the right to challenge a denial of benefits through an Article 78 proceeding, and (2) the differences between an Article 78 proceeding and a review by the Special Medical Review Committee. As a result, Morris's execution of that form did not constitute a knowing waiver under the Due Process Clause of the Fourteenth Amendment of the right to an Article 78 proceeding.

Defendant's motion for summary judgment on the plaintiff's second and third causes of action, challenging the Special Medical Review Committee's procedures, is granted, and the plaintiff's motion for summary judgment on his second cause of action is denied.[7] The Clerk of Court shall close the case.

SO ORDERED:

*See Dulce v. Dulce,* 233 F.3d 143, 145 (2d Cir.2000).

---

7. Plaintiff's additional requests for relief are based upon his second and third claims and are, therefore, denied.