**Richard J. PISCIOTTI, Sheriff, Plaintiff,**

**v.**

**COUNTY OF WAYNE, a Municipal Corporation, or political subdivision in the State of New York, Peter Stirpe, individually and as an employee of Wayne County, and John Doe, individually and as an employee of Wayne County, Defendants.**

**No. 99–CV–6204L.**

United States District Court, W.D. New York.

Dec. 21, 1999.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Edward L. Fiandach, Fiandach & Fiandach, Rochester, NY, for Plaintiff.

John M. Wilson, II, Boylan, Brown, Code, Fowler, Vigdor & Wilson, LLP, Rochester, NY, for County of Wayne & John Doe.

Charles F. Crimi, Jr., Rochester, NY, for Peter Stripe.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Richard J. Pisciotti, commenced this action under 42 U.S.C. § 1983 and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, alleging that defendants wrongfully released certain information about plaintiff to a third party. Defendants have filed a motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

Plaintiff is the Sheriff of Wayne County, New York. He alleges that in March 1998, defendant Peter Stirpe, Wayne County's Personnel Director, turned over to Ronald Holdraker, the editor of the *Times of Wayne County* ("the *Times*"), documents relating to an injury that plaintiff had suffered and for which he was then receiving Workers' Compensation benefits. The reporter had requested the documents under New York's Freedom of Information Law ("FOIL"), Pub.Off.L. art. 6.

In the May 5, 1998 issue of the *Times,* a column written by Holdraker appeared under the title, "Okay, So Why Didn't The Sheriff, Undersheriff & Chief Deputy Get A Raise?—*Your tax money . . . You decide!* " The column criticized the performance of Pisciotti and two other members of the Sheriff's Department. One paragraph stated the following:

> Sheriff Richard Pisciotti allegedly was out on the town one night and came into his office late one night. He allegedly slipped and fell and hurt his left arm in the hallway outside his office. According to paperwork obtained by the Times, the Sheriff has collected over $71,136 in compensation claiming he sustained an injury resulting in the loss of 57% use of the arm. According to one department head, the checks for the fall were "strangely delivered right to his office, not his home." The checks, according to

the department head, do not include medical costs. "They were separate. They also do not include any loss in pay." The department head said the Sheriff, an elected official, continued to receive his normal pay during this period. The slip/fall windfall is a nice example for an elected official and winner of the 1998 "Conservative of the Year." Gee, I wonder what hand the Sheriff accepted that award with?

Plaintiff's Response to Defendants' Motion to Dismiss Ex. A.

Plaintiff alleges that Holdraker obtained this information about plaintiff's injury and receipt of Workers' Compensation benefits from Stirpe. Based on these allegations, plaintiff has asserted two causes of action. Count I of the complaint alleges that defendants' actions have caused plaintiff to suffer various forms of damage. The legal basis for this claim is not readily apparent from the complaint itself, but at oral argument, plaintiff's attorney stated that it is a claim under § 1983, based on defendants' alleged violation of plaintiff's constitutional right to privacy.

Count II alleges that defendants' actions violated the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. However, plaintiff's counsel stated at oral argument that he agreed that FOIA has no application to this case, and that he was voluntarily withdrawing Count II. I then dismissed Count II on the record. All that remains before me, then, is the purported § 1983 claim asserted in Count I.

## DISCUSSION

I find that plaintiff has failed to state a cause of action under § 1983, and that the complaint must therefore be dismissed. In short, plaintiff is attempting to use a federal statute to seek redress for at most, an alleged violation of New York State law.

In reaching this conclusion, I am cognizant of the fact that this is a motion to dismiss under Rule 12 and not a motion for summary judgment. Nevertheless, I find that dismissal of the complaint is warranted because plaintiff's own allegations fail to set forth a viable federal claim.

Plaintiff makes much of defendants' alleged violation of FOIL and other New York statutes. Even if defendants' actions did violate those statutes, however, that does not provide this court with jurisdiction to hear plaintiff's claim. The only basis upon which plaintiff argues that § 1983 applies here is his contention that defendants violated his federal constitutional right to privacy in his "medical records."

■ This argument suffers from several defects. First, plaintiff's own allegations do not support his claim that defendants released "medical records." All that the newspaper column stated was that Pisciotti had fallen outside his office one night, and had received a certain amount of Workers' Compensation benefits for 57% loss of the use of his arm. To call that information "medical" in nature is a mischaracterization. It is also clear that whatever emotional distress or injury to plaintiff's reputation that the publication of this information may have caused, stems not from the fact of the injury itself but from the circumstances under which it allegedly happened, *i.e.*, after plaintiff had spent a night "out on the town," and from the amount of benefits that plaintiff had received, while continuing to receive his full salary.

Moreover, to the extent that the fact of plaintiff's injury could be considered "medical" information, it is hardly the kind of medical information that has been found to be entitled to privacy protection. Although courts have recognized a right of privacy with respect to certain types of medical information, plaintiff's position casts too wide a net in that regard. Clearly, information relating to illnesses or injuries that might carry some social stigma or cause embarrassment are entitled to some privacy protection. *See Powell v. Schriver,* 175 F.3d 107, 111 (2d Cir.1999) (noting

the "excrutiatingly [sic] private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter ...."); *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir.1994) ("Individuals who are infected with the HIV virus clearly possess a constitutional right to privacy regarding their condition").

The nature of the medical condition involved, then, is a factor that must be considered in determining the extent to which it is protected. *See Powell*, 175 F.3d at 111 ("the interest in the privacy of medical information will vary with the condition"); *Khalfani v. Secretary, Dep't of Veterans Affairs*, No. 94–CV–5720, 1999 WL 138247 *6 (E.D.N.Y. Mar.10, 1999) ("The records at issue in this case contained rather mundane information regarding Khalfani's tendon avulsion, his physical therapy and limitations on his ability to work—not the type of deeply personal information that was at issue in prior cases"). In the case at bar, Pisciotti's "condition" was simply an injured arm, which is hardly an injury that the average person would feel embarrassed about or want to keep strictly private. And although the newspaper column's reference to Pisciotti having been "out on the town" vaguely connotes that he may have been partying or socializing, plaintiff's allegations do not suggest that defendants ever told that to Holdraker. The column itself references the "paperwork obtained by the Times" only in reference to the amount of compensation that plaintiff had received and the extent of his injury, not to what Pisciotti had been doing that night.

In addition, the right to confidentiality with respect to one's medical records "is something less than a fundamental right." *Powell*, 175 F.3d at 112 n. 2. Rather, it is a qualified or conditional right that exists only when the individual's interest in maintaining that confidentiality is not outweighed by the government's interest in having or using the information. *Doe v. Marsh*, 918 F.Supp. 580, 585 (N.D.N.Y. 1996), *aff'd*, 105 F.3d 106 (2d Cir.1997).

Here, the information that was disclosed—that an elected official had been injured and was receiving Workers' Compensation benefits—is arguably of some legitimate interest to the public. Given the "mundane" nature of the information, *Khalfani*, 1999 WL 138247 *6, I find that whatever interest that plaintiff had in maintaining the secrecy of this information was insufficient to give rise to a violation of his privacy rights.

█ In addition, even assuming *arguendo* that Stirpe's actions violated plaintiff's constitutional rights, there is no basis presented here for holding Wayne County liable. A municipality is not liable for a deprivation of a plaintiff's constitutional rights unless such deprivation resulted from "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy...." *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A local government cannot be held liable under § 1983 on a theory of *respondeat superior*. *Pembaur v. Cincinnati*, 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

█ Generally, a single incident is insufficient to meet a plaintiff's burden of establishing that a policy or custom of the municipality is the moving force behind the deprivation of his constitutional rights. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality). See also *Powell v. Gardner*, 891 F.2d 1039, 1045 (2d Cir.1989) ("single incident alleged in a complaint ... especially if it involved only actors below the policy-making level, generally will not suffice to raise an inference of a custom or policy").

Here, plaintiff has not alleged the existence of any official custom or policy that led to the alleged violation of his constitutional right to privacy. In fact, the complaint alleges that "[o]n or about April 2, 1998, the **COUNTY OF WAYNE**, denied such request" for records pertaining to

plaintiff's injury, and that *notwithstanding* that decision, "Defendant, **PETER STIRPE**, and/or **JOHN DOE**, and/or **COUNTY OF WAYNE** released [the] information...." Complaint ¶¶ 8, 9. From these allegations, the only apparent basis upon which the County could be said to have released the information would be under a theory of *respondeat superior*, which as stated has no application here.

▮ I also find that defendant Stirpe has qualified immunity from liability for his actions. "The doctrine of qualified immunity 'shields government officials from liability for damages on account of their performance of discretionary official functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Powell*, 175 F.3d at 111 (quoting *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir.1995)) (additional internal quotation marks omitted). Further, even if the plaintiff's rights were clearly established, a government actor is entitled to qualified immunity if at the time of the challenged act it was objectively reasonable for him to believe that his actions were lawful. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

▮ In determining whether a particular legal principle was clearly established for purposes of qualified immunity, the Second Circuit has set forth three factors to consider: whether the right was defined with reasonable specificity; whether the decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful. *Powell*, 175 F.3d at 111; *Horne v. Coughlin*, 155 F.3d 26, 29 (2d Cir.1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 594, —— L.Ed.2d —— (1999); *Rodriguez*, 66 F.3d at 476. The doctrine of qualified immunity shields government employees, acting in their official capacity, "from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Although it was clearly established in 1998 that *some* types of medical information (such as HIV status) were protected by a right to privacy, *see Doe*, 15 F.3d 264, it was certainly not clearly established that information of the type at issue here—*i.e.* an arm injury and the receipt of Workers' Compensation benefits—was so protected. Indeed, as I have already stated, I do not believe that a right to privacy with respect to such information exists at all, even today, much less that it was a clearly established right in April 1998. Plaintiff has not cited a single case standing for the proposition that a public official violates a person's constitutional rights by disseminating such information, and Stirpe is clearly entitled to qualified immunity in that regard.

▮ I also note that both plaintiff's and defendants' briefs devote considerable discussion to whether the release of this information was contrary to New York State law. Since "the mere violation of a state statute does not automatically give rise to a violation of federal Constitutional rights," *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir.1985), and because I find no basis for a federal claim here, I need not reach this issue. To the extent that plaintiff is attempting to assert claims under state law pursuant to this court's supplemental jurisdiction under 28 U.S.C. § 1367(c), I decline to exercise such jurisdiction. *See Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir.1990).

## CONCLUSION

Defendants' motion to dismiss the complaint (Docket Item 7) is granted, and the complaint is dismissed.

IT IS SO ORDERED.