**Joel LEVIN, Plaintiff,**

v.

**BOARD OF EDUCATION OF the CITY OF CHICAGO, a municipal corporation, and Cermak Health Services, a division of Cook County, a municipal corporation, Defendants.**

**No. 05 C 1729.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 8, 2007.

Albert F. Ferolie, Law Offices of Albert F. Ferolie, P.C., Chicago, IL, for Plaintiff.

Sunil Kumar, Chicago School Reform Board of Trustees, Jamie Melissa Sheehan, John A. Ouska, Chicago, IL, for Defendants.

## MEMORANDUM OPINION & ORDER

GRADY, District Judge.

This case is before the court for ruling on defendants' motions to dismiss the Fourth Amended Complaint. For the following reasons, the motions are granted.

## BACKGROUND

Plaintiff Joel Levin is employed by the Board of Education of the City of Chicago (the "Board") as a teacher at Consuella B. York Alternative High School ("York School"), a Chicago public school for inmates at the Cook County Jail.[1] In his

---

1. *See* Chicago Public Schools High School Directory, Consuella B. York Alternative High

original complaint filed in state court, Levin sued the Board and Cook County (incorrectly identified as Cermak Health Services)[2] alleging that defendants improperly disclosed his personal medical information in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d *et seq.,* and Illinois common law. Plaintiff's claims were based on two sets of facts, the first relating to a tuberculosis screening in 2004 and the second relating to a memorandum the Board distributed after he contracted meningitis in November 2002. After removing the case to federal court based on federal question jurisdiction, defendants moved for dismissal. The motions to dismiss were granted in part and denied in part. (12.20.05 Mem. Op. at 1.) Specifically, the court dismissed the HIPAA claims because there is no private right of action for HIPAA violations (*id.* at 6), but found that plaintiff had raised claims under 42 U.S.C. § 1983.[3] (*Id.* at 7–8.) As for the state law claims, we dismissed the claims that were based on the distribution of the meningitis memorandum because the statute of limitations had expired, but the claims based on the tuberculosis screening survived because defendants presented no argument for dismissal. (*Id.* at 6–7.)

Levin subsequently amended his complaint several times, resulting in the Fourth Amended Complaint which is presently before the court. In the Fourth Amended Complaint, Levin sues both the Board and Cook County d/b/a Cermak Health Services (the "County"), alleging that defendants improperly disclosed his personal medical information and thus are liable under § 1983 for violating his constitutional right to privacy and under Illinois common law for "public disclosure of private facts," "intrusion upon seclusion" and "loss of privacy." Plaintiff's amended claims stem from two different sets of facts.

### Claims Based on Tuberculosis Screenings

In Count I, plaintiff asserts § 1983 and state law claims relating to tuberculosis screenings conducted in 2004 and 2005. Regarding the 2004 screening, according to plaintiff, he received a letter from the Board around February 17, 2004 directing him to attend a mandatory Cook County Department of Corrections "Civilian Inservice Training" at Moraine Valley Community College. On February 23, 2004, plaintiff attended the training, which was conducted by "agents, servants or employees" of the County. There were approximately twenty participants, including ten of plaintiff's fellow employees. As part of the training, participants were informed that they would be subjected to mandatory tuberculosis screening. The participants were given medical forms to complete that sought certain medical information regarding the tuberculosis test that was about to be administered, and they were instructed to put a "plus mark" at the top of the form if they had previously tested positive for tuberculosis. They were then instructed to stand in line to be given the tuberculosis skin test.

School, *available at* http://www.cps.k12.il.us/schools/hsdirectory/schools/consuellab_york.shtml.

**2.** The County, d/b/a Cermak Health Services, provides medical services for detainees and staff at the Cook County Jail.

**3.** The § 1983 claims were not expressly stated in the complaint, but plaintiff clarified in his response brief that he was asserting claims under § 1983 and the factual allegations were consistent with a § 1983 claim. (12.20.05 Mem. Op. at 7–8.) Defendants did not reply to plaintiff's § 1983 argument, so the § 1983 claims were not dismissed. (*Id.* at 8.)

Plaintiff had previously tested positive for tuberculosis. It was his understanding that once an individual tests positive for tuberculosis, he or she "does not need and should not have a subsequent test." (Fourth Am. Compl. at 2, ¶ 9.) Plaintiff wrote "Check Your Records" at the top of his medical form, refused to participate in the screening, and left the room.

There was a second tuberculosis screening in February 2005, while this litigation was pending. According to plaintiff, he received a letter around April 20, 2005 directing him to attend another mandatory "Civilian Inservice Training" at Moraine Valley Community College. Like the previous year, the training included mandatory tuberculosis screening. There were approximately 30 participants, including 10–12 of plaintiff's co-workers. Participants were instructed to complete a medical form then stand in line to be given the tuberculosis skin test. This time, Levin completed the medical form and stood in line. When his turn came, he informed the County's personnel that he had previously tested positive for tuberculosis. At that point, he was instructed to sit back down and not participate in the screening.

According to plaintiff, the manner in which both the 2004 and 2005 screenings were conducted disclosed to others (including his fellow employees) that he had previously contracted tuberculosis. Plaintiff further alleges that the manner in which the screenings were conducted constitutes an unconstitutional, widespread practice and custom of the Board and/or the County. Based on the alleged disclosure of his private medical information, plaintiff sues defendants under § 1983 for violating his constitutional right to privacy, and also asserts claims for public disclosure of private facts, intrusion upon seclusion and loss of privacy under Illinois common law.

### *Claims Relating to Plaintiff's Contraction of Meningitis*

In Count II, plaintiff raises § 1983 and state law claims relating to his contraction of meningitis. On November 3, 2002, plaintiff was diagnosed with meningitis and then hospitalized for thirty-six days. On November 4, 2002, the assistant principal of York School wrote and distributed a memorandum regarding "Meningitis" to the staff of York School (approximately ninety people) and to employees of the Cook County Department of Corrections. The memorandum stated in full:

> One of our staff members has been diagnosed with meningitis. He is currently hospitalized and undergoing treatment. It is not known at this time whether the meningitis is viral or bacterial. Meningitis is not highly contagious, but to allay concerns among staff members the attached sheet will provide you with additional information.

(Fourth Am. Compl., Ex. A.) Plaintiff was not mentioned by name. Attached to the memorandum was a two-page Illinois Department of Public Health publication about meningitis.

According to plaintiff, there is also (1) an agenda disseminated by the Board that included plaintiff's name and medical condition as part of the written agenda for presentation at the mandatory professional development meeting (*Id.*, Ex. C), and (2) minutes from Local School Council ("LSC") meetings in January and February 2003 that identified plaintiff and his personal medical condition (*Id.*, Ex. D). A review of the documents shows that although they refer to Levin by name, they do not reveal any private medical information about Levin. The November 8, 2002 agenda contains a line in the "Welcome" section that states "Joel Levin Update." (*Id.*, Ex. C.) In the minutes from the Local School Council meeting held on the Janu-

ary 18, 2003, under "Staff Notifications" in the "Principal's Report" section, the minutes state "Sick Leaves: Joel Levin, Div. 9; Departure: Jeanette Kweli, Counselor; Resignation: Joel Rapp; New Teachers: Matthew Driscoll, Div. 11, English, and Kevin Hall, Div. 11, Science." (*Id.*, Ex. D.)

According to plaintiff, he was not aware of the November meningitis memorandum until he returned to work in March 2003 (and did not discover the other documents until early 2006). In any event, upon his return to work, he discovered that his colleagues knew about his illness and diagnosis of meningitis. His co-workers "made inappropriate and wrongful comments" about his health condition, "including but not limited to an instance where some of his immediate colleagues created a mock 'Joel Levin Memorial Crate' in the teachers' lounge." (*Id.* at 8, ¶ 13.)

Plaintiff contends that by disseminating the meningitis memorandum, the agenda and the LSC meeting minutes, the Board improperly disclosed his private health information and thus is liable under § 1983 for violating his constitutional right to privacy. Additionally, plaintiff asserts claims for public disclosure of private facts, intrusion upon seclusion and loss of privacy under Illinois common law.

Defendants now seek dismissal of all claims.

## DISCUSSION

■ The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 354 (3d ed.2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Hentosh v. Herman M. Finch Univ. of Health Sciences*, 167 F.3d 1170, 1173 (7th Cir.1999); *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir.1997). But the court need not ignore factual allegations that undermine the plaintiff's claim. *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir.1992). Dismissal is appropriate only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir.1997).

For purposes of discussion, we will treat defendants' motions as a single motion because they make many of the same arguments.[4]

### A. § 1983 Claims for Violation of Constitutional Privacy Right

■ To be actionable, a § 1983 claim must be premised on a violation of a plaintiff's federal constitutional or statutory rights by a person acting under color of law. 42 U.S.C. § 1983. As explained in our earlier opinion in this case, the Supreme Court has recognized a constitutional right to privacy regarding certain types of information under the Fourteenth Amendment.[5] *Whalen v. Roe*, 429 U.S.

---

4. The Board is a defendant in both Counts I and II, whereas the County is only a defendant in Count I.

5. The Constitution protects two kinds of privacy interests. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct.

869, 51 L.Ed.2d 64 (1977). This case involves the first category, the "right to 'confidentiality,' " as opposed to the "right to autonomy and independence in decision-making." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir.1994).

589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Although the contours of the right continue to be refined, see Denius v. Dunlap, 209 F.3d 944, 955–956 (7th Cir.2000), in the Seventh Circuit it is clearly established that individuals have a " 'substantial' right in the confidentiality of medical information that can only be overcome by a sufficiently strong state interest."[6] Id. at 956 (citing Anderson v. Romero, 72 F.3d 518, 522 (7th Cir.1995)). Here, plaintiff claims that because of the way the tuberculosis screenings were conducted in 2004 and 2005, his personal medical information was disclosed to others and thus the Board and the County have violated his constitutional right to privacy. Likewise, he contends that the Board disclosed his personal medical information through the meningitis memorandum, agenda and LSC meeting minutes, again violating his constitutional right to privacy. The court addresses these claims in turn.

### 1. § 1983 Claims Based on Tuberculosis Screenings

■ Regarding the tuberculosis screenings, defendants argue that to the extent plaintiff's § 1983 claim is based on the 2004 screening, it must be dismissed because plaintiff, through his own allegations, concedes that there was no disclosure of private medical information. Plaintiff opposes dismissal, arguing that because he is challenging the screening procedure, it is irrelevant whether he submitted to the screening. We cannot agree. Without disclosure, there is no violation of the constitutional right to privacy. Doe v. Southeastern Penn. Transp. Auth. (SEPTA), 72 F.3d 1133, 1138 (3d Cir.1995) (disclosure required for privacy violation); C.N. v. Ridgewood Bd. of Educ., 319 F.Supp.2d 483, 494 (D.N.J.2004) (same); see Nat'l Fed'n of Fed. Employees v. Greenberg, 983 F.2d 286, 294 (D.C.Cir.1993) ("questions do not invade privacy, answers do"). Here, plaintiff does not contend that during the 2004 screening defendants discussed his medical information publicly, or even that he disclosed any of his medical information to defendants. Rather, plaintiff alleges that when he received the medical form to complete, he wrote "Check Your Records" at the top, "refused to participate in the screening and left the room." (Fourth Am. Compl., 2 at ¶ 11.) Although plaintiff contends that his medical status regarding tuberculosis was somehow disclosed to the other participants in the screening room, his factual allegations undermine that contention. See Thomas v. Farley, 31 F.3d 557, 559 (7th Cir.1994) (plaintiff pled himself out of court by alleging facts inconsistent with legal conclusion); Hamilton, 976 F.2d at 343 (court not required to ignore facts set forth in complaint). Indeed, plaintiff's own allegations establish that there was no disclosure of private medical information during the 2004 screening. Accordingly,

---

**6.** We question whether every disclosure of medical information, regardless of the medical condition at issue, should trigger constitutional scrutiny. The constitutional right to the confidentiality of medical records and communications is a qualified right. Anderson v. Romero, 72 F.3d 518, 522 (7th Cir.1995). And as the Second Circuit has explained, the interest in the privacy of medical information varies depending on the condition at issue. Powell v. Schriver, 175 F.3d 107, 111 (2d Cir.1999). There is a vast difference between disclosing that a person is HIV positive or is a transsexual and disclosing more mundane maladies. See id. (discussing compelling interest in privacy of persons who are HIV positive and transsexuals); Pisciotti v. County of Wayne, 76 F.Supp.2d 307, 309–310 (W.D.N.Y.1999) (discussing significant difference between medical conditions that carry social stigma and those that do not). For present purposes, however, we need not evaluate the scope of the constitutional privacy right regarding medical information.

plaintiff has failed to state a § 1983 claim for a violation of his constitutional right to privacy based on that screening.

To the extent plaintiff's § 1983 claim is based on the 2005 screening, the claim fares no better. Unlike the year before, during the 2005 screening, plaintiff completed the medical form and presented himself for the tuberculosis test. He alleges that after informing the County personnel that he had previously tested positive, he was "instructed to sit back down and not participate in the tuberculosis screening." (Fourth Am. Compl., 4 at ¶ 29.) Based on the fact that these events took place in a small room in front of other participants, plaintiff alleges that defendants unconstitutionally disclosed his private medical information. (Id., 4–5 at ¶¶ 30, 34.)

It is unclear whether plaintiff believes his co-workers overheard him reveal his tuberculosis status or whether he believes they were able to infer that he had previously tested positive based on the fact that he was not screened. Either way, constitutional privacy concerns are not implicated. The fact that someone may have overheard plaintiff's disclosure does not support a constitutional claim in this case. As several courts have explained, "some amount of sharing of medical information in areas where it might be overheard by

other patients—e.g., in hospital emergency rooms, school infirmaries, and the waiting room of a doctor's office—is commonplace." *Johnson v. Riggs*, No. 03–C–219, 2005 WL 2249874, at * 9 (E.D.Wis. Sept.15, 2005); *Brown v. Baker*, No. 2:03–CV–0169–RLY–WGH, 2005 WL 1399315, at *2 (S.D.Ind. June 10, 2005). If, on the other hand, plaintiff's claim is based not on what his co-workers overheard but on what they were able to deduce, his § 1983 claim is even weaker. It is purely speculative to suggest because plaintiff was not screened, others concluded that he had previously tested positive for tuberculosis. For a constitutional privacy claim based on disclosure of medical information, the crucial factor is what information was actually disclosed, not what conclusions someone might reach based on his independent knowledge. *See SEPTA*, 72 F.3d at 1139 (where administrator asked staff physician about purpose of medications an unidentified employee was taking, no disclosure occurred even though physician deduced employee's identity based on independent knowledge). More importantly, even if there arguably was a disclosure, a fair reading of the Fourth Amended Complaint shows that, at best, any disclosure of plaintiff's medical condition was negligent. Mere negligence does not give rise to liability under § 1983.[7] *See Thomas*, 31 F.3d at 558.

---

**7.** Relying on *Bradford v. Semar*, No. 4:04 CV 1711 CDP, 2005 WL 1806344, at *3 (E.D.Mo. July 28, 2005), both defendants argue that plaintiff's § 1983 claim based on the 2005 health screening fails to state a claim because at the time of that screening, plaintiff had already filed public complaints that disclosed his supposedly private health information, so plaintiff could not have had a legitimate expectation of privacy in that health information at the time of the 2005 screening. "Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record." *Doe v. City of*

*New York*, 15 F.3d at 267. Plaintiff thus arguably lost any constitutionally protected privacy interest in his tuberculosis status when filed his original, public complaint in this case disclosing that status. His only alternative, however, would have been to proceed under a pseudonym—a disfavored practice permissible only under exceptional circumstances. *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Because there are other reasons to dismiss plaintiff's § 1983 claim based on the 2005 screening, we decline to determine whether he had a constitutional privacy in-

 Furthermore, even if plaintiff's allegations supported an inference that there was an unconstitutional disclosure of his private medical information (which they do not), there is no basis for holding either the Board or the County liable. As local government units, the Board and County are only liable under § 1983 if the execution of an official policy or custom deprived plaintiff of a constitutional right. *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 690–691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Allegations of "widespread, enduring practices which violate constitutional rights in a systemic nature" are sufficient to state a § 1983 claim based on custom. *Pope v. City of Chicago*, No. 95 C 311, 1996 WL 392162, at *2 (N.D.Ill. July 11, 1996) (*citing Cornfield ex rel. Lewis v. School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993)). Isolated instances of unconstitutional conduct, on the other hand, are insufficient. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Here, plaintiff alleges that the "method and manner" utilized by defendants "regarding the tuberculosis screening was a wide spread unconstitutional practice and custom" followed by defendants. (Fourth Am. Compl., 5 at ¶ 36.) But the custom allegation is based on just two instances of unconstitutional conduct—the 2004 screening and the 2005 screening—which "does not suggest a widespread, enduring practice that violates constitutional rights in a systemic manner." *Pope*, 1996 WL 392162 at *3 (dismissing § 1983 claim based on single instance of purported unconstitutional conduct by municipal employees); *Cornfield*, 991 F.2d at 1326 (2 instances of alleged unconstitutional conduct insufficient to establish custom). As before, plaintiff's factual allegations undermine his terest in his tuberculosis status at the time of

conclusory allegation that defendants had a widespread, unconstitutional practice and custom. *Thomas*, 31 F.3d at 559 (plaintiff pled himself out of court by alleging facts inconsistent with legal conclusion).

Given the various flaws described above, plaintiff has failed to state a § 1983 claim against either defendant based on the tuberculosis screenings.

### 2. § 1983 Claim Based on Plaintiff's Contraction of Meningitis

 The remaining federal claim is plaintiff's § 1983 claim against the Board relating to his contraction of meningitis. This claim is based on the meningitis memorandum dated November 4,2002, the agenda from a mandatory professional development meeting dated November 8, 2002 and the LSC meeting minutes from January and February 2003. According to the Board, this claim should be dismissed because none of the documents underlying the claim disclosed private medical information about Levin. We agree.

The meningitis memorandum distributed to the York staff never mentioned plaintiff's name. Rather, the memorandum disclosed that an unidentified staff member was receiving treatment for meningitis and provided information about meningitis to allay concerns among staff members about contracting the disease. Communications about an individual's medical condition that do not reveal the individual's identity do not amount to an unconstitutional disclosure of private information. *SEPTA*, 72 F.3d at 1139 (no disclosure of medical condition where administrator asked staff physician about purpose of medications an employee was taking without identifying the employee); *C.N.*, 319 F.Supp.2d at 494 (no constitutional privacy violation where disclosed medical information was not in the 2005 screening.

personally identifiable form). Because the meningitis memorandum did not identify plaintiff, distribution of the memorandum does not violate plaintiff's constitutional right to privacy.

As for the agenda from the mandatory professional development meeting and the minutes from the LSC meetings, although those documents refer to plaintiff by name, they do not disclose any private medical information about plaintiff. The agenda states "Joel Levin Update" with no reference whatsoever to his medical condition, whereas the LSC meeting minutes reveal only that Levin was on sick leave. It is simply too great a stretch to suggest that revealing that an employee is on sick leave violates the Constitution. *See Johnson,* 2005 WL 2249874 at * 9 (official telling inmate that it was time to take medication did not implicate constitutional privacy concerns).

Plaintiff, however, argues that by reading the meningitis memorandum (which did not identify plaintiff) together with the agenda and meeting minutes (which identified plaintiff but not his medical condition), one can reasonably conclude that plaintiff's private medical information was unconstitutionally disclosed. The court is not persuaded. None of the allegations in the Fourth Amended complaint allow the inference that the "Joel Levin Update" at

the professional development meeting involved public disclosure of the fact that Levin had contracted meningitis.[8] Nor can one infer from the LSC meeting minutes that the disclosure that Levin was on sick leave included a disclosure about his specific medical condition. The mere possibility that Levin's co-workers might have pieced together information and deduced that Levin had meningitis does not give rise to a § 1983 claim for unconstitutional disclosure of medical information.[9] *See SEPTA,* 72 F.3d at 1139 (where administrator asked staff physician about purpose of medications an unidentified employee was taking, no disclosure occurred even though physician deduced employee's identity based on independent knowledge).

Plaintiff's § 1983 claim relating to his contraction of meningitis is dismissed for failure to state a claim.

### B. State–Law Claims

■ Plaintiff also asserts state-law tort claims for public disclosure of private facts, intrusion upon seclusion and loss of privacy based on the 2004[10] tuberculosis screening and the purported disclosures about his contraction of meningitis. However, because we have dismissed all of the federal claims, the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining state-

---

**8.** If plaintiff knew that his condition was, in fact, discussed at the meeting, it seems likely that he would have included that in his complaint rather than relying on the agenda's innocuous language.

**9.** Furthermore, even if the Board disclosed information that made it possible for someone to deduce that Levin had meningitis, nothing in the Fourth Amended Complaint suggests that the Board's conduct amounts to more than negligence, so there is no basis for liability under § 1983. *See Thomas,* 31 F.3d at 558.

**10.** Although count I actually alleges state law claims based on both screenings, plaintiff evidently intended only to bring state law claims based on the 2004 screening. (In response to defendants' argument that any state law claims based on the 2005 screening are time-barred by the one-year limitations period set forth in the Illinois Tort Immunity Act, 745 ILCS 10/8–101, plaintiff asserts that he did not raise any state law claims based on the 2005 screening.) We accept that plaintiff intended to limit his state law claims in Count I to the 2004 screening and construe the complaint accordingly.

law claims. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir.1994) (under general rule, court should relinquish jurisdiction over state law claims if all federal claims are dismissed before trial).

## *CONCLUSION*

The motions to dismiss filed by defendants Board of Education of the City of Chicago and Cook County are granted. Accordingly, this case is dismissed with prejudice as to the federal claims and for lack of subject matter jurisdiction over the remaining state-law claims.